(No. 34496.—

DELL CARROLL, Appellant, *vs.* MARTIN H. CALDWELL, Appellee.

*Opinion filed Dec. 18, 1957—Rehearing denied Jan. 23, 1958.*

488

Fribley and LaCharite, of Pana, for appellant.

Harold L. Harrison, and Loy & Zeigler, both of Fairfield, for appellee.

Mr. Justice Daily delivered the opinion of the court:

Plaintiff, Dell Carroll, brought this suit against Martin H. Caldwell, defendant, in the circuit court of Wayne County, seeking to raise a trust and to acquire an over-riding royalty interest with respect to certain oil-and-gas leases. Upon defendant's motion a second amended complaint was dismissed for failure to state a cause of action and, since a freehold is involved, (*Evans* v. *Pure Oil Co.* 369 Ill. 416,) plaintiff has appealed directly to this court for review.

The allegations of the contested complaint are substantially as follows: Paul J. Hawkins and others owned two adjoining parcels of real estate in Wayne County which are referred to respectively as tracts A and B, the former containing some 23 acres and the latter slightly less than 12 acres. On August 18, 1948, such owners executed separate oil-and-gas leases for each tract to one George Cravens who, by mesne conveyances, thereafter assigned a

3/128 of 8/8 overriding royalty interest in each leasehold to the plaintiff. Although two leases were involved, the property they embraced came to be described collectively as the "Hawkins Leasehold." The lessors had fee simple title to tract A but had acquired tract B through a tax foreclosure proceeding that left their true ownership in question. To avoid delay and expense, tract B was never developed or communitized with tract A, although both leases authorized communitization, and, despite the Illinois spacing statute, (Ill. Rev. Stat. 1947, chap. 104, par. 83,) two oil-and-gas wells were drilled on tract A. Defendant, as either owner or agent of the entire working interest, operated the wells and plaintiff was paid for 3/128 of the total oil produced therefrom.

Oil and gas continued to be produced from the wells in considerable quantities until 1953 at which time adjoining leasehold owners involved in the same pool became interested in unitizing their acreage so that secondary recovery of oil and gas could be effectively carried out. A petroleum engineer was employed to determine the possibility of unitization and the amount of future production that could reasonably be expected from the various properties drawing from the pool. Following this study it was determined and agreed that, under unitization, there should be allocated to the owners of the Hawkins leasehold, (*i.e.,* tracts A and B combined,) .0302813 of all oil and gas produced from the pool. Plaintiff alleges both that he is entitled to a 3/128 part of such allocation by virtue of his overriding royalty interest in both tracts, and that defendant or his agent, in negotiating the unitization agreement, represented to plaintiff that he would receive a 3/128 part of the oil allocated to the Hawkins leasehold. The unitization agreement, which is an exhibit to the complaint, shows that it embraced the "P. J. Hawkins" lease, which was described as being 40 acres in the quarter section of land where tracts A and B are located.

Continuing, the complaint alleges plaintiff was not aware that both wells were on tract A, or that tract B was entirely undeveloped, and that he signed the unitization agreement in January, 1954, relying on the promise of defendant that he would continue to receive a 3/128 proportionate share of the oil based on the allocation for both tracts. To include the spouse's interest, plaintiff and his wife reexecuted the unitization agreement on May 4, 1954, and the defendant signed it on May 19, 1954, as owner of the working interest in the Hawkins leasehold. When abstracts of title were examined by counsel representing the pooled unit operators, it was discovered that the lease on tract B had, by its terms, expired on October 17, 1948, because of nondevelopment, thus leaving both plaintiff and defendant without an interest in said tract. Defendant received this information shortly after he had signed the agreement and, on May 20 and 21, 1954, he immediately procured and recorded new leases on tract B in his own name. Thereafter the unitization agreement was redated to June 1, 1954, was made effective as of July 1, 1954, and was recorded.

Since plaintiff held no record interest in tract B, the buyers of the unitization oil have, from the effective date of the unit operation, refused to pay him a 3/128 share of the entire allocation made to the Hawkins leasehold but have, rather, limited his overriding royalty to 3/128 of an allocation based solely on an interest in tract A. In other words, instead of receiving 3/128 of the .0302813 share allocated to the Hawkins leasehold, plaintiff is being paid but 3/128 of .023437, the latter allocation being based upon tract A alone. By this action plaintiff seeks to compel defendant to assign to him 3/128 of the 8/8 overriding royalty interest in the new leases covering tract B. It is his theory that defendant was guilty of either fraud or breach of a fiduciary relationship to the extent that equity will raise either a resulting or constructive trust and restore his 3/128 overriding royalty interest in tract B.

Since defendant, by filing a motion to dismiss, has admitted all facts well pleaded in the complaint, (*Schreiner* v. *City of Chicago,* 406 Ill. 75, *Pease* v. *Kendall,* 391 Ill. 193), the sole question before us is whether such complaint states a cause of action. The complaint, in turn, is to be appraised in light of the principle that pleadings are construed strictly against the pleader. *Fowley* v. *Braden,* 4 Ill. 2d 355.

A resulting trust, as defined in section 404, Restatement of the Law of Trusts, arises "where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest otherwise effectively disposed of." It is elementary that a resulting trust must arise immediately upon the vesting of title, (*Kohlhaas* v. *Smith,* 408 Ill. 535; *Brod* v. *Brod,* 390 Ill. 312), and, in practice, such trusts normally arise where one furnishes all or a part of the consideration for the purchase of property while the conveyance is taken in the name of another. (*Fields* v. *Fields,* 415 Ill. 324; *McCabe* v. *Hebner,* 410 Ill. 557). The complaint at hand does not allege that plaintiff furnished any of the consideration for the new leases on tract B, nor does it allege facts from which to infer that the leases were taken in defendant's name with an intention of reserving a beneficial interest in the plaintiff. In the absence of such allegations, or of any facts from which a resulting trust could be fairly inferred, it is manifest that plaintiff cannot succeed on the theory of a resulting trust.

Constructive trusts, on the other hand, arise by operation of law from circumstances which stamp the conduct of a person unfair or wrongful and permit him to take advantage of another. (*Fowley* v. *Braden,* 4 Ill. 2d 355; Restatement of Trusts, sec. 44). They are divided into

494

two general classes, one being where actual fraud is considered as equitable ground for raising the trust, and the other being where the existence of a confidential or fiduciary relationship and a subsequent abuse of confidence arising therefrom, are sufficient to establish the trust. (*Ridgely* v. *Central Pipe Line Co.,* 409 Ill. 46; *Kester* v. *Crilly,* 405 Ill. 425; *Steinmetz* v. *Kern,* 375 Ill. 616). In seeking to impress the new leases on tract B with a trust to the extent of a 3/128 overriding royalty interest, plaintiff's complaint alleges in the alternative that defendant procured such leases in his own name either through fraud, or through an abuse of what is described as a "fiduciary and trusted capacity."

It is immediately apparent, however, that plaintiff cannot succeed on a theory of fraud. We do not find, nor have we been informed, wherein plaintiff's complaint makes any allegations of actual fraud. It charges, rather, only that "if the defendant Caldwell did not believe" the original lease on tract B was in full force and effect when he solicited plaintiff's signature to the unitization agreement, then defendant secured such signature by fraudulent representations. Fraud is never presumed and can be alleged or proved, both at law and in equity, only by allegation and proof of facts constituting the fraud. (*Anderson* v. *Anderson,* 339 Ill. 400; 19 I.L.P., Fraud, sec. 36). Statements by way of general conclusions of fraud are not sufficient in a pleading. The allegations relied upon by the plaintiff, conditioned as they are on what the defendant may or may not have believed, amount to no more than an argumentative conclusion of fraud and are thus not sufficient to charge the actual fraud necessary to raise a constructive trust. Moreover, on oral argument before this court, plaintiff in effect conceded the deficiency in his complaint when he acknowledged defendant was merely "mistaken" as to the status of the lease on tract B at the

time he procured plaintiff's signature on the unitization agreement.

Defendant asserts the complaint also fails to establish a constructive trust of the second general class in that it does not allege a relationship which would give rise to a fiduciary relation as a matter of law, or allege facts showing superiority and influence on his part and a resulting repose of confidence on the part of the plaintiff. In short, it is his position that the complaint fails to allege the fiduciary relationship necessary to establish a constructive trust. It is settled law that courts of equity will not set any bounds to the facts and circumstances out of which a fiduciary relationship may spring. (*Fisher* v. *Burgiel,* 382 Ill. 42). The relationship may exist as a matter of law between partners, joint adventurers, trustee and beneficiary, guardian and ward, attorney and client, and principal and agent, (*Stone* v. *Stone,* 407 Ill. 66; *Ditis* v. *Ahlvin Construction Co.,* 408 Ill. 416;) and it may arise as the result of a joint enterprise, (*Harmon* v. *Martin,* 395 Ill. 595), or an intimate business association, (*Schueler* v. *Blomstrand,* 394 Ill. 600), or it may be moral, social, domestic, or even personal in its origin (*Apple* v. *Apple,* 407 Ill. 464). Briefly, as stated in *Fisher* v. *Burgiel,* 382 Ill. 42, at 52-53, "The fiduciary relationship with its legal incidents includes not only all legal and technical relations * * *, but it extends to every possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side and resulting domination and influence on the other."

There are no allegations in the complaint which support a theory that a fiduciary relationship existed by virtue of confidence reposed on plaintiff's part and resulting superiority and influence on the part of defendant; thus if such a relation existed at all it must have arisen as an incident to the business transactions of the parties reflected in the pleadings. The complaint makes no attempt to place

a legal or technical label on the business relationship. This however, is not fatal. Equity looks to the substance of a transaction, not its form, and to this end numerous courts have held that fiducial relationships do not depend on nomenclature. See: 89 C.J.S. Trusts, sec. 151, note 92 pp. 1055-1056; *Ditis* v. *Ahlvin Construction Co.,* 408 Ill. 416.

Authorities discussed in *Dunbar* v. *Olson,* 349 Ill. App. 308, 110 N.E. 2d 664, ordain that neither a mining partnership nor a joint adventure, and consequently no fiduciary relation as a matter of law, results between the owner of the working interest and the owner of an overriding royalty interest under an oil-and-gas lease. Defendant interprets such authorities as foreclosing any possibility that a fiduciary relationship existed, or could exist, in this case. Such a broad argument, however, overlooks the facts pleaded which show that plaintiff and defendant went beyond the normal relationship of working owner and royalty owner, and jointly embarked upon the further enterprise of unitizing their interests in the Hawkins leasehold with the interests of adjoining owners who were drawing oil from the same pool. Their rights, duties and liabilities in this new venture were in no manner controlled by their previous relationship but by the terms of the unitization agreement.

It is pointed out in 30 Am. Jur., Joint Adventures, sec. 30, that courts have not laid down an exact definition of what amounts to a joint adventure inasmuch as the answer depends largely upon the terms of the particular agreement, upon the construction which the parties have given it, and upon the nature of the undertaking as well as other facts. The most that can be done, it is said, is to point out certain general characteristics of the relationship of joint adventurers, and certain elements which are generally regarded as essential thereto. Accordingly, it can be said that a joint adventure contemplates an enterprise

jointly undertaken; that it is an association of such joint undertakers to carry out a single project for profit; that there must be a community of interest in the performance of a common purpose, a proprietary interest in the subject matter, a right to direct and govern the policy in connection therewith, and a duty, which may be altered by agreement, to share both in profit and losses. (*Hagerman* v. *Schulte*, 349 Ill. 11; *Harmon* v. *Martin*, 395 Ill. 595; *Harris* v. *Young*, 298 Ill. 319, 23 I.L.P. Joint Adventures, 48 C.J.S., Joint Adventures, 30 Am. Jur., Joint Adventures, 80 A.L.R. 1037; 138 A.L.R. 955). The same authorities, together with *Berkey* v. *Third Ave. Railway Co.*, 244 N.Y. 84, 155 N.E. 58, and *Gleichman* v. *Famous Players-Lasky Corp.*, 241 Mich. 266, 217 N.W. 43, establish that the relationship is a matter of intent, as between the parties, and arises only where they intended to so associate themselves, such intention being determined in accordance with the ordinary rules governing the interpretation and construction of contracts.

The facts pleaded in the complaint, and the unitization agreement incorporated therein, show that the unitization venture possessed all the recognized attributes of a joint adventure. It was a single project; the common interest and purpose of plaintiff and defendant was to get more revenue from tracts A and B through the secondary recovery of oil and gas; both plaintiff and defendant had, or thought he had, a proprietary interest in the oil and gas underlying both tracts; each had a right to determine if unitization should be attempted and a converse power of withholding agreement to it, and each had a similar duty, fixed by the unitization agreement, with respect to profit or losses that would result from the unitization venture. Likewise the intention of the parties to associate jointly in the venture is clearly manifested in the agreement they signed when it states: "Regardless of division of ownership, said unitized area hereafter shall be operated for oil

and gas purposes in the same maner as though it were included in one oil and gas lease executed by the owners of all the minerals and royalty interests therein."

Helpful analogy is found in *Hathaway* v. *Porter Royalty Pool,* 296 Mich. 90, 295 N.W. 571, 138 A.L.R. 955, where a joint adventure was found to exist under comparable facts. In that case promoters and land owners entered into an agreement whereby each owner was to turn over any oil found on his land and, after expenses of management had been paid, all owners and promoters were to share in the royalties from such oil in proportion to their holdings. The agreement in the present case was between the royalty owners and the lessees and had as its purpose the recovery of secondary gas and oil which was to be shared, regardless of where it was produced, in amounts proportionate to the parties' holdings in the pooled land. We conclude that plaintiff and defendant, in embarking and joining in such venture, stood in the relation of joint adventurers when they executed the unitization agreement.

Defendant concedes, as all authorities hold, that joint adventurers, as a matter of law, stand in a fiduciary relation to each other and have the duty to act for the benefit of the other as to matters within the scope of the relation. (See: 30 Am. Jur., Joint Adventures, sec. 34; 48 C.J.S., Joint Adventures, sec. 5; Restatement of Trusts, sec. 2). The relationship ordinarily precludes one of them from purchasing or leasing property relating to the enterprise, either for himself or another, in the absence of a full disclosure to his associates. (*Ditis* v. *Ahlvin Construction Co.,* 408 Ill. 416; *Meinhard* v. *Salmon,* 249 N.Y. 458, 164 N.E. 545). Yet, under the facts pleaded, it appears that defendant, upon learning the lease on tract B was not in effect as believed by the parties when the unitization agreement was signed, obtained a new lease for his own benefit, then further sought to enhance his position over the plaintiff

by redating the unitization agreement. He thus violated his duty to act for the benefit of his joint adventurer in a matter within the scope of their relation and, as a practical matter, gained for himself at plaintiff's expense the latter's proportionate share of the unitized oil allocated to tract B. In equity, therefore, the conduct of the defendant shown by the allegations of the complaint is sufficient to cause a constructive trust to arise by operation of law and we hold that it was error to dismiss such complaint.

Defendant alleged in his motion to dismiss, and suggests here, that section 9 of the Statute of Frauds, (Ill. Rev. Stat. 1955, chap. 59, par. 9), is a complete defense to the plaintiff's complaint. While the statute renders equity powerless to create a constructive trust where there is a mere oral promise to convey to another, (*Stein v. Stein,* 398 Ill. 397), there is no abridgement of the provision of the Statute of Frauds making oral trusts of lands void where the constructive trust arises out of the breach of a fiduciary relationship existing independently of an oral trust. *Kester v. Crilly,* 405 Ill. 425.

The order of the circuit court of Wayne County is reversed and the cause is remanded to that court with directions to deny the motion to dismiss, and for further proceedings consistent with this opinion.

*Reversed and remanded, with directions.*