*In re* ESTATE OF VANCE KIME, Deceased.—(ALICE FLOYD, Petitioner-Appellee, *v.* RAYMOND KIME *et al.*, Respondents-Appellants.)

Third District    No. 76-36

Opinion filed October 14, 1976.

Sale & Eaken, of Kankakee (Edwin W. Sale, of counsel), for appellants.

James Walker, Ltd., of Bloomington, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:
This is an appeal from an order of the Circuit Court of Kankakee County which directed executors of the estate of Vance Kime, deceased, to inventory certain personal property as property owned by Vance Kime, deceased. The executors of the estate of Vance Kime had previously inventoried only a one-fourth interest in such personal property.

The petitioner-appellee, Alice Floyd, a daughter of decedent and a person interested in the decedent's estate, filed a petition for citation against respondents Raymond Kime, Carroll Eastman and Gary Kime, alleging that the decedent, Vance Kime, at his death, owned all interest in the aforesaid personal property and that respondents, at the time the petition was filed, were in possession of a three-fourths interest of the property. Raymond Kime was a co-executor until after the order appealed from was entered. Neither the remaining executor nor the guardian ad litem in the estate participated in this appeal.

The cause was tried by the court without a jury. The trial court found for petitioner-appellee and against respondents. As noted, the trial court

ordered that the executors of the estate of Vance Kime inventory the personal property as property owned by Vance Kime, deceased. The respondents appeal, asserting that (1) the trial court's decision is against the manifest weight of the evidence, (2) the trial court erroneously failed to uphold the existence of a constructive trust, and (3) the trial court erroneously rejected an offer of proof as barred by the Dead Man's Act. Ill. Rev. Stat. 1973, ch. 51, par. 2(d).

The decedent Vance Kime died on November 17, 1971. He was survived by his wife, two sons, Raymond Kime and Gary Kime, and four daughters, Betty Stang, Norma Gates, Lois Brown and Alice Floyd. A foster child of decedent, Carroll Eastman, also survived. Roger Brown, a son-in-law of decedent, and respondent Raymond Kime were appointed executors of the estate of Vance Kime. Prior to this death, decedent was engaged in a farming operation. Decedent Vance Kime and all respondents contributed labor to the farming operation.

The executors filed an inventory which listed, as decedent's property, a one-fourth interest in certain grain, livestock, farm machinery and accounts receivable from grain elevators. The citation petition which was filed alleged that decedent owned a four-fourths interest, or the entire interest, in these properties. A purported answer to the citation petition was filed by Roger Brown and respondent Raymond Kime, as executors of the estate of Vance Kime. Although all respondents were ordered to file an answer, they did not do so. The trial court, acting in its discretion, required proof of the matters at issue, even though respondents had failed to answer. The major defense asserted to the allegations of petitioner was that the decedent and respondents had formed a partnership, and that decedent and respondents each had a one-fourth interest in the partnership. It was asserted that the property was owned by the partnership and, therefore, that the decedent owned a one-fourth interest in the property and that Raymond Kime, Carroll Eastman and Gary Kime each owned a one-fourth interest in the property. The proceedings substantially revolved around testimony as to whether there was an existence of a partnership between the decedent and the three respondents named.

In a memorandum, the trial court summarized and discussed the evidence on the issue of whether there was in fact a partnership. The court pointed out that all grain sales made by the farming operation were credited to decedent. All funds from the farming operation were kept in an account in the name of decedent and his wife. Respondent Raymond Kime received from the farming operation $6,600 in 1970 and $5,876 in 1971. Respondent Gary Kime received from the farming operation $5,000 in 1970 and $5,000 in 1971. Respondent Carroll Eastman received from the farming operation $2,800 in 1970 and $4,593 in 1971. Respondent

Gary Kime listed, on his 1970 Federal income tax return, $2,800 as farm partnership income. Respondent Gary Kime's 1971 Federal income tax return and respondent Raymond Kime's 1970 and 1971 Federal income tax returns, as well as respondent·Carroll Eastman's 1970 and 1971 Federal income tax returns listed no partnership income. There was evidence that decedent received nearly three-fourths of the farm income for the last full year of his life. Respondent Gary Kime testified that each of the alleged partners took what he needed to live on out of the account held in the name of decedent and his wife, and that the remaining farm income was used in the farm operation.

Roger Brown, son-in-law of decedent, and an executor of the decedent's estate, testified that decedent had told him that respondents Raymond Kime and Carroll Eastman were partners of decedent. Brown also testified to a conversation in which decedent, in the presence of Raymond Kime and Carroll Eastman, asking respondent Gary Kime if he "wanted to come in with us farming," to which respondent Gary Kime replied affirmatively. Brown further testified to two occasions in which the decedent said he had been out-voted by the respondents in decisions to purchase farm equipment. Betty Stang, Norma Gates, and Lois Brown, decedent's daughters, testified that decedent conferred with respondents with respect to farming decisions.

Richard McHie, a feed salesman, testified that decedent had told him that respondents were decedent's partners. Decedent told his accountant that decedent and respondents had formed a partnership. Although decedent's accountant had advised that a "formal partnership" be established, no written partnership agreement was ever executed. The executors did not file a partnership inventory in decedent's estate, as would be required by the Probate Act (Ill. Rev. Stat. 1973, ch. 3, par. 188).

The parties to this appeal contend for different standards of review to be applied to the trial court's findings. The weight to be accorded to the trial court's findings of fact is determinative of this appeal.

As stated in *Decker v. Decker* (1927), 324 Ill. 457, the Illinois Supreme Court concluded:

> "[W]here the case is tried before the chancellor, who saw and heard the witnesses, and the evidence is conflicting, a reviewing court will not disturb the chancellor's finding of facts unless the decree is clearly against the weight of the evidence. That rule has been announced in many cases, but it has also been held that when this court, from a consideration of the whole record, is convinced that the evidence does not justify the decree, our duty to reverse it is clear." (324 Ill. 457, 475.)

The rule has sometimes been expressed as it was in *Olson v. Olson* (1965), 66 Ill. App. 2d 227, where the court recited that the trial court heard the

evidence and saw the witnesses and that it was the duty of the trial court to make the necessary determination on the facts unless findings are presumed to be correct. The court there said:

"The evidence was ample to support the findings of the trial Court and it is not for us to substitute our findings for those of the Court below unless such findings are clearly and manifestly against the weight of the evidence." 66 Ill. App. 2d 227, 236.

While this rule, which is sometimes referred to as the "manifest weight of the evidence rule," is most frequently used in describing the findings by a trial court on a bench trial, it is sometimes contended, as it is in this case, that even a stricter rule applies, analogous to the rule announced by the Illinois Supreme Court in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494. In the *Pedrick* case the Supreme Court held that verdicts ought to be directed and judgments *n.o.v.* entered only when all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors a movant (for a directed verdict or judgment) that no contrary verdict based on that evidence could ever stand. We do not find that this rule is applied to any cases other than jury cases and that the manifest evidence rule still applies. We conclude, however, that on the basis of the manifest evidence rule, the decision of the trial court must be sustained.[1] Evidence was heard by the trial court on the issue of the existence of the partnership. Much of the evidence heard leads to conflicting inferences as to whether there was a partnership. Portions of the evidence indicated absence of a partnership account (*Miller v. Ousley* (1929), 334 Ill. 183), the absence of a partnership income tax return (*Estate of Drennan* (3d Dist. 1956), 9 Ill. App. 2d 324), and the absence of written articles of partnership (*Urban v. Brady* (1st Dist. 1967), 86 Ill. App. 2d 158). While these items individually would not be conclusive of the absence of a partnership, they may collectively be strong evidence that there was in fact no partnership.

The trial court in this case found, in light of all the evidence, that the relationship between the respondents and the decedent was "an undefined, hit or miss, arrangement, not clearly thought out or enunciated by the parties, based upon an unverbalized meeting of the minds that the specific amounts [of money] anyone took [from the farming operation] were not of great importance, since it all remained in the family." The trial court further found that the beneficiary "family" of the farming operation included not only the respondents, but "also those who would inherit in the expected course of events." It was apparently assumed that "decedent and his wife would die before members of the next generation." The next generation in the family would include not only

---

[1] See also *City of Evanston v. Ridgeview House* (1976), 64 Ill. 2d 40, 57, 349 N.E.2d 399, 407-08.

Raymond Kime and Gary Kime but, also, the four daughters. The trial court concluded that there was no evidence of a desire to exclude any of decedent's children, after the death of decedent, from benefits resulting from the farming operation.

■■ Upon such evidence in the record in the trial court and upon findings of the trial court, we cannot say on appeal here that the finding of the trial court is manifestly against the weight of the evidence. Accordingly, we conclude that the judgment of the trial court should be affirmed.

■ It was further contended that the trial court failed to uphold the existence of a constructive trust. An issue which is not presented to or considered by the trial court cannot be raised for the first time on review. (*Kravis v. Smith* (1975), 60 Ill. 2d 141.) As noted in the discussion of the facts, this case was tried in the court below without the aid of a formal answer by respondents. The major contention of respondents in the trial court was that a partnership existed. Respondents contend on appeal now that the matter of a constructive trust was also raised in the trial court. In respondents' brief they state that "[t]his position was mentioned twice to the court below, although incorrectly referred to as a resulting trust." Three memoranda prepared by the trial court of approximately 50 pages in length, show no consideration by the trial court of the issue of a constructive trust. The trial court, in one memorandum, states that "[b]oth parties tried the case on the theory that the ownership of all the property was the same, *i.e.*, it was all owned by decedent or was all partnership property * * *." It, therefore, appears that the issue of a "constructive trust" was not adequately raised in the trial court so that it cannot now be raised on review in this court.

■■ We note, also, that a constructive trust must be grounded on actual fraud or abused confidential or fiduciary relationship. (*Carroll v. Caldwell* (1958), 12 Ill. 2d 487.) There is no evidence in the record of actual fraud in the instant case. For the reasons which we have discussed, we must credit the findings and recitals of the trial court in this case. The relationship between decedent and respondents was consistent with an objective of preserving and expanding the farming operation for the benefit of decedent's succeeding generation, according to the court. Such relationship may have in fact been a confidential one. The current situation, of which respondents complain, does not result from decedent's abuse of that relationship. We find no basis for declaring the establishment of a constructive trust.

The final issue raised by respondents is the assertion that the trial court erred in rejecting an offer of proof as being barred by the Dead Man's Act. The citation petition in the action was filed on August 9, 1973. The issue was, therefore, governed by the Dead Man's Act as effective

October 1, 1973. (Ill. Rev. Stat. 1973, ch. 51, par. 2(d)). The Dead Man's Act generally prohibits a party to a civil action from testifying on his own motion or in his own behalf when an adverse party sues or defends as the executor, administrator, heir, legatee or devisee of any deceased person. This rule is subject to the exceptions that a party or interested person may testify to facts occurring *after* the death of the deceased person, and that, if any agent of a deceased person or any protected party or any person directly interested in the outcome of the litigation shall, in behalf of the protected party, testify to any conversation or transaction with the opposite party or party in interest, then such opposite party or party in interest shall also be permitted to testify as to the same conversation or transaction.

The issue which arises here results from the examination of respondent Raymond Kime by the trial court concerning the location of certain personal property at the time of the death of decedent. Such inquiry was made to provide a basis for the inference that the personal property located, at the time of decedent's death, on real estate owned by the decedent, was personal property owned by decedent. Such inferential proof of ownership later proved to be unnecessary, because the case was tried, as the trial court noted, on the theory that all of the property was either owned by the partnership or owned by the decedent.

■■ Respondents have submitted a series of cases dealing with the breadth of the transaction exemption to the Dead Man's Act, when a protected party or an interested person testifies in behalf of a protected party. Such cases are not applicable here, where the testimony was elicited from a court's witness and not a witness testifying in behalf of a party to the action. Raymond Kime was examined by the court as authorized by section 185 of the Probate Act. (Ill. Rev. Stat. 1973, ch. 3, par. 185.) The court was presented with a delicate situation of a party protected by the Dead Man's Act prosecuting an action individually against a party who, if sued in his representative capacity, would also have been entitled to protection by the Dead Man's Act. The court, therefore, carefully limited the questioning of the witness. In this situation, the testimony could not be said to have been made in behalf of Petitioner, and the additional testimony offered by respondents, but rejected by the trial court, was barred by the Dead Man's Act. *In re Estate of Halaska* (1940), 307 Ill. App. 176.

For the reasons stated and since we do not find that the decision of the trial court is against the manifest weight of the evidence, the judgment of the Circuit Court of Kankakee County is affirmed.

Affirmed.

STENGEL and BARRY, JJ., concur.