## TEXAS OIL & GAS CORP. *v.*
## HAWKINS OIL & GAS, INC.

84-36                                          668 S.W.2d 16

Supreme Court of Arkansas
Opinion delivered April 23, 1984
[Rehearing denied June 18, 1984.]

*Martin, Vater & Karr*, by: *Charles Karr*, for appellant.

*Smith, Stroud, McClerkin, Dunn & Nutter*, by: *Hayes C. McClerkin*, for appellee.

P. A. HOLLINGSWORTH, Justice. The sole issue raised in this appeal concerns the ownership of certain oil and gas leases. The appellee, Hawkins Oil & Gas Inc. (hereinafter "Hawkins") entered into a Joint Operating Agreement with the appellant, Texas Oil & Gas Corp. (hereinafter "Texas") for the drilling of a well identified as the Knuckles#1 Unit. Texas was the operator of the unit and Hawkins was a nonoperator.

At the time the Joint Operating Agreement was executed, June 25, 1981, Hawkins had acquired certain leases in the NW 1/4 of the NW 1/4 of Section 6, Township 9 North, Range 22 West, in Johnson County, Arkansas. The leases were acquired from the heirs of Alexander B. Hamilton in the mistaken belief that he was predeceased by

his wife, Sarah Eliza Hamilton, and that they had no children. In fact, Alexander Hamilton died before his wife and devised his mineral interest to her.

Prior to the execution of the Joint Operating Agreement, Hawkins had proposed to Texas that Hawkins drill a well in Section 6, but by mutual agreement of the parties, Texas was to be named the operator of the unit drilling operations in as much as it had a predominant position in Section 6. As a result of this decision, all of Hawkins' abstracts and title opinions were delivered to Texas on May 4, 1981.

During the period these acts were transpiring, the Knuckles #1 Well was being drilled, and on November 13, 1981, the well blew out, requiring evacuation of the area.

On December 3, 1981, after reading the abstracts and title opinions, Texas determined that the heirs of Alexander B. Hamilton did not own the minerals in the NW 1/4 of the NW 1/4 of Section 6. Without notifying its nonoperator signator, Hawkins, Texas acquired leases contrary to the position of Hawkins from the heirs of Sarah Eliza Hamilton.

Hawkins filed suit claiming a fiduciary relationship and as a result of the actions of Texas, the trial court found that Texas was holding in trust for Hawkins one half of the interest in leases acquired by Texas from the heirs of Sarah Eliza Hamilton. As a result of that decree, we hear this appeal. We affirm. Jurisdiction rests in this Court under Rule 29 (1) (n).

The appellees contend that the agreement executed by the parties created a fiduciary relationship whereby Texas was to act for the benefit of all the nonoperators and therefore owed all the nonoperators the duty of fair dealing. We are urged to accept that Texas was precluded from buying for itself the outstanding interest in the subject matter of the joint venture and that Hawkins is entitled to share in Texas' purchase of the leases.

We have held that the elements of a partnership must be present in a joint adventure. *State ex rel Attorney General* v. *Gus Blass Company,* 193 Ark. 1159, 105 S.W.2d 853 (1937). We later clarified this language by stating, "We did not say in the *Gus Blass Co.* case that a joint venture must contain every element of a partnership, for then there would be no difference between the two. What we said was that a joint adventure is 'in the nature of a partnership of a limited character,' and we then examined the agreement in question to determine whether it was sufficiently similar to a partnership to constitute a joint adventure." *Johnson* v. *Lion Oil Company,* 216 Ark. 736, 227 S.W.2d 162 (1950). We are persuaded the similarities are present here.

We now decide whether the obligations of this joint adventure extended to the Sarah Eliza Hamilton interest. We have previously adopted the view expressed by the majority in *Meinhard* v. *Salmon,* 249 N.Y. 458, 164 N.E. 545 (1928). There, as here, Salmon quickly and quietly took a new lease for his own benefit without notice to his coadventurer. In holding that Meinhard was entitled to share in the new lease, the learned jurist, Cardoza, C.J. said in language worth repeating:

> Joint adventurers, like co-partners, owe to one another, while the enterprise continues, the duty of the finest loyalty. Many forms of conduct permissible in a workaday world for those acting at arm's length are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior . . . .A managing coadventurer appropriating the benefit of such lease without warning to his partner might fairly expect to be reproached with conduct that was underhand, or lacking, to say the least, in reasonable candor, if the partner were to surprise him in the act of signing the new instrument. Conduct subject to that reproach does not receive from equity a healing benediction.

In this instance, there was a fiduciary relationship.

There was a relationship of trust and confidence between the parties as a result of their execution of the Joint Operating Agreement. Therefore, the operator owed to the non-operator a duty of fair dealing.

Affirmed.