SCHMUDE OIL COMPANY v OMAR OPERATING COMPANY

Docket No. 109364. Submitted March 8, 1990, at Lansing. Decided
April 10, 1990. Leave to appeal applied for.

Omar Operating Company and others, collectively referred to
herein as Omar, formed a joint venture for oil and gas develop-
ment and production in Michigan. Schmude Oil Company, a
dissolved corporation which produced oil and gas in Michigan,
was a lessee of acreage upon which Omar desired to place an
oil drilling unit. Omar contacted Schmude to participate in the
project for an anticipated working interest of twenty-five per-
cent. Further investigation revealed that Schmude's lessor
owned only an undivided one-third interest in the property.
Omar acquired oil and gas leases from the owners of the other
undivided two-thirds interest in the property. Omar informed
Schmude that only twenty-five percent of the forty acres
thought to be under Schmude's control was actually leased by
Schmude and that Schmude's interest in the project would be
reduced from twenty-five percent to 9.0008 percent to reflect
Schmude's diminished holding and the open acreage would be
distributed proportionately to all joint venture participants.
Schmude signed the agreement. A drilling title opinion was
subsequently issued which purportedly further reduced
Schmude's working interest to 4.5 percent. Schmude filed suit
against Omar and others in Livingston Circuit Court. Following
a bench trial, the court, Daniel A. Burress, J., ruled that
defendants had breached a fiduciary duty to plaintiff by failing
to notify it of the newly discovered "open acreage" before it
was proportionately distributed among the joint venture partic-
ipants. Defendants appealed.

The Court of Appeals held:

1. The trial court did not err in finding that the joint
operating agreement did not constitute the entire agreement
between Schmude and Omar and could be voided by Schmude.

REFERENCES

Am Jur 2d, Contracts § 504; Equity §§ 169, 170, 172; Estoppel and
Waiver §§ 1, 2, 26, 27; Evidence §§ 1044-1046, 1071.

See the Index to Annotations under Cancellation or Rescission;
Estoppel and Waiver; Gas and Oil; Joint Ventures; Parol Evi-
dence.

The evidence indicates that the parties contemplated a twenty-five percent working interest for Schmude, and the trial court properly found that Schmude was induced to participate on that basis.

2. Schmude's execution of the joint operating agreement and its subsequent conduct does not estop it from asserting a working interest other than 9.0008 percent. The defense of estoppel is not available to defendants.

3. The trial court properly ruled that the affirmative defense of laches is not available to defendants.

4. The trial court did not clearly err in finding that defendants owed a duty of fair dealing to Schmude which required them to notify Schmude of the open acreage and provide it an early opportunity to obtain the oil and gas lease to cover that property and that defendants breached that duty by acquiring the lease themselves, thereby reducing Schmude's working interest in the project.

5. Defendants' argument that Schmude's contribution to the drilling unit was only one-sixth of the 37.60 acres and its interest in the well should be based on the actual contribution is rejected. The trial court properly found Schmude to be responsible for approximately twenty-five percent of all drilling costs and entitled to approximately twenty-five percent of the proceeds from the oil and gas well.

Affirmed.

1. CONTRACTS — PAROL EVIDENCE — CONTRACT NEGOTIATIONS — PRIOR AGREEMENTS.

Parol evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous.

2. CONTRACTS — PAROL EVIDENCE — INTENTION OF PARTIES.

Extrinsic evidence of prior or contemporaneous agreements or negotiations is admissible where it bears on the threshold question of whether the parties to a contract intended the writing to be a complete expression of their agreement, i.e., an integrated instrument.

3. ESTOPPEL — WORDS AND PHRASES.

Estoppel arises where: (1) a party, by representation, admissions, or silence, intentionally or negligently induces another party to believe facts; (2) the other party justifiably relies and acts on this belief; and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts.

4. Equity — Defenses — Laches — Prejudice.

The defense of laches arises from the failure of a party to do something which should be done or failure to claim or enforce a right at a proper time; to successfully assert laches as an affirmative defense, a defendant must demonstrate prejudice occasioned by the delay.

5. Joint Adventures — Joint Venturers — Duty of Disclosure — Fraud.

Each member of a group united in a common enterprise owes to every other member the duty of fair, open, and honest disclosure, and no member, by connivance, deceit, or suppression of facts within the right or to the advantage of any other member to know, can secure or accept secret profits, commissions, or rebates to the disadvantage of others, and he holds gains acquired by his breach of faith for the common benefit of his associates in proportion to their respective interests; a violation of this duty constitutes actionable fraud.

6. Contracts — Rescission.

Rescission of a contract is an equitable remedy to be exercised in the sound discretion of the trial court.

*William E. Tapovatz*, for plaintiff.

*Loomis, Ewert, Ederer, Parsley, Davis & Gotting* (by *Maurice E. Schoenberger* and *Michael G. Lofgren*), for defendants.

Before: Griffin, P.J., and Wahls and Brennan, JJ.

Per Curiam. Defendants appeal as of right from a judgment following a bench trial declaring plaintiff's oil and gas leasehold working interest in an oil and gas well to be 24.86056 percent. We affirm.

I

This dispute involves the leasehold oil and gas rights to a parcel of land located in Iosco Township, Livingston County, Michigan. Defendants Omar Operating Co., a Texas corporation; GHO, a

Texas general partnership; Railhead Energy Company, a Texas corporation; Lyco Energy Corporation, a Texas corporation; and Hugh E. Hanagan, formed a joint venture for oil and gas development and production in Michigan in July, 1982. Defendant James F. O'Briant was president of Omar and a managing partner of GHO. As such, O'Briant represented the joint venturers (hereafter described as the Omar Group) and was responsible for providing geological consulting and other organizational services with respect to certain acreage covered by the oil and gas leases held by the Omar Group.

In his capacity as manager, O'Briant hired defendant Midwest Hydrocarbons, Inc., owned by defendant John B. DeVlieger, to acquire oil and gas leases for the Omar Group. Defendant GEO Horizons Exploration, Inc., was also hired by O'Briant as the Omar Group's geologist.

Defendant Dart Oil & Gas Corporation entered into a seismic option and joint operating agreement with the Omar Group dated July 29, 1983, whereby Dart was to receive one-third of any lease acquired by the Omar Group in Livingston County in exchange for conducting seismic exploration of certain target acreage located in Livingston County. Schmude was not a party to this agreement and was unaware of its existence.

The other defendants in this case are investors who acquired their interest in the disputed oil and gas rights through the Omar Group. Schmude, a dissolved corporation which produced oil and gas in Michigan, was a lessee of acreage upon which the Omar Group desired to place an oil drilling unit. (Dennis Schmude was the principal of Schmude Company and managing partner of Schmude and Pangborn Associates, the actual lessee of a portion of the target drilling area.)

Sometime in early 1982, the Omar Group became interested in drilling on a 160-acre prospect described as the northwest quarter of section 23, township 2 north, range 3 east, Iosco Township, Livingston County, Michigan. In this regard, Midwest conducted a leasehold title search of the subject property. This investigation disclosed Schmude's leasehold interest in what was thought to be one-quarter (approximately forty acres) of the 160-acre unit area. Specifically, Schmude was believed to be the lessee of the southwest quarter of the proposed unit under lease from Julia Ruttman. Elexco, a lease broker who acquired the lease for Schmude in 1981, did not conduct a title search or otherwise verify the title. Consequently, Omar contacted Schmude to participate in the project. Schmude's anticipated working interest was set at twenty-five percent.

However, a subsequent investigation for a drilling title opinion on the subject property disclosed that the Ruttman lease held by Schmude did not cover the entire forty acres within the drilling unit thought to be under Schmude's control. Apparently, Ruttman owned only an undivided one-third interest in the property, with her granddaughter, Penna Elswick, owning the other two-thirds. Additionally, a portion of the land was subject to land contract held by Mr. and Mrs. Keith R. Bailer. The Omar Group therefore acquired oil and gas leases on June 8, 1984, from both Elswick and Bailer to cover the open acreage, with Midwest as lessee.

Schmude first became aware of its weakened interest when its president, Dennis Schmude, was informed by O'Briant at an oil and gas picnic in June, 1984, that Schmude's interest had been reduced. Schmude thereafter received a "speed letter" from O'Briant dated June 18, 1984, inform-

ing Schmude that only twenty-five percent of the forty acres thought to be under Schmude's control was actually leased by Schmude, that Schmude's interest would therefore be reduced and the open acreage would be distributed proportionately to all joint venture participants.

Schmude then received the joint operating agreement (JOA) which reduced its interest to 9.0008 percent. Schmude contends that it was pressured to sign the agreement by Lyco and was assured that their differences would be worked out. Lyco denied extending such assurances and asserted that Schmude never protested the interest reduction.

Lyco completed drilling at the site (the Cigna 1-23 well) on July 20, 1984. On February 13, 1985, a drilling title opinion was issued which purportedly further reduced Schmude's working interest to 4.5 percent. Upon receiving notice of this further reduction, Schmude filed the instant suit.

A bench trial was held, and each party submitted a proposed opinion to the court. The court issued its opinion on May 19, 1988, ruling that defendants had breached a fiduciary duty to Schmude by failing to notify it of the newly discovered "open acreage" before it was proportionately distributed among the defendants. The trial court disregarded Schmude's signature on the JOA as having been induced by promises that all differences would be worked out in the future. Since these assurances had come from a fiduciary, the court reasoned that the JOA was voidable by Schmude. The court further found that Schmude's cause of action was brought within the statute of limitations. Finally, the court concluded that defendants held the Elswick and Bailer leases as constructive trustees for Schmude's use and benefit, vesting leasehold title thereto in Schmude.

Schmude was found responsible for twenty-five percent of all drilling costs but entitled to twenty-five percent of all proceeds from the Cigna 1-23 well. A judgment to this effect was entered on July 11, 1988.

II

On appeal, defendants first argue that the trial court clearly erred by finding that the JOA did not constitute the entire agreement between the parties and could be voided by Schmude. We disagree.

Parol evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous. *Central Transport, Inc v Fruehauf Corp,* 139 Mich App 536, 544; 362 NW2d 823 (1984). A prerequisite to the application of this rule, however, is a finding that the parties intended the written instrument to be a complete expression of their agreement. Thus, extrinsic evidence of prior or contemporaneous agreements or negotiations is admissible as it bears on the threshold question of whether the written instrument is such an integrated instrument. *NAG Enterprises, Inc v Allstate Industries, Inc,* 407 Mich 407, 410; 285 NW2d 770 (1979).

In the instant case, the trial court found that the joint venture arose upon Schmude's assent to be responsible for twenty-five percent of the costs pursuant to the April 27, 1984, authorization for expenditures. Such a finding will not be disturbed on appeal unless clearly erroneous. MCR 2.613(C). A finding is clearly erroneous if the reviewing court is left with the definite and firm conviction that a mistake has been made. *Precopio v Detroit,* 415 Mich 457, 462; 330 NW2d 802 (1982). Consider-

ing the May 23, 1984, letter showing Schmude's intent to participate, the attached authorization for expenditures setting Schmude's working interest at twenty-five percent and Dennis Schmude's trial testimony that Lyco assured him their differences would be worked out later regarding Schmude's working interest, we are not left with the definite and firm conviction that a mistake has been made.

Given the trial court's finding and the evidence contained in the record below which supports it, we conclude that the parties did not intend for the JOA to constitute a final integrated agreement. Accordingly, the parol evidence rule does not apply. *NAG Enterprises, supra.* The JOA thus was not the final and all-encompassing manifestation of the agreement of the parties as argued by the defendants. The intent of the parties was properly discerned by the trial court as the trier of fact from the aforementioned documents as well as from Dennis Schmude's testimony. Such evidence indicates that the parties contemplated a twenty-five percent working interest for Schmude, and the trial court properly found that Schmude was induced to participate on that basis.

III

Next, defendants argue that Schmude is estopped from asserting a working interest other than 9.0008 percent by its execution of the JOA as well as by its subsequent conduct. We disagree.

The elements of estoppel were set forth by this Court in *Cook v Grand River Hydroelectric Power Co, Inc,* 131 Mich App 821, 828; 346 NW2d 881 (1984):

An estoppel arises where: (1) a party by repre-

sentation, admissions, or silence, intentionally or negligently induces another party to believe facts; (2) the other party justifiably relies and acts on this belief; and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts.

These elements have been applied by this Court in the context of an oil and gas lease. *West Bay Exploration Co v Amoco Production Co,* 148 Mich App 197, 207; 384 NW2d 407 (1986), remanded on other grounds 425 Mich 879; 389 NW2d 865 (1986).

Equitable estoppel rests in broad principles of justice. *Mertz v Mertz,* 311 Mich 46, 55; 18 NW2d 271 (1945). Since equity is involved, our standard of review is de novo, with no reversal unless the trial court's findings were clearly erroneous or we conclude that we would have reached a different result had we occupied the lower court's position. *Calvary Presbyterian Church v Presbytery of Lake Huron of the United Presbyterian Church,* 148 Mich App 105, 109-110; 384 NW2d 92 (1986), lv den 425 Mich 863 (1986).

In the case at bar, the elements of estoppel are not present. The record does not indicate that Schmude induced defendants to believe it would settle for a 9.0008 percent working interest. On the contrary, the evidence shows that the JOA was drafted by defendant Lyco and that Schmude was induced to sign the JOA on the basis of Lyco's assurances that their differences would be worked out. It was Schmude, rather than defendants, who relied on such assurances to its detriment. Thus, the trial court properly ruled that the equitable remedy of estoppel is not available to defendants. We would not have reached a different result had we occupied the trial court's position.

Defendants also assert that the equitable doc-

trine of laches bars Schmude's claim to a higher working interest. Estoppel by laches is the failure to do something which should be done under the circumstances or the failure to claim or enforce a right at a proper time. *Bartnicki v Wayne Co Drain Comm'r,* 18 Mich App 200, 205; 170 NW2d 856 (1969), lv den 382 Mich 783 (1969). To successfully assert laches as an affirmative defense, a defendant must demonstrate prejudice occasioned by the delay. *Lothian v Detroit,* 414 Mich 160, 168; 324 NW2d 9 (1982).

However, courts are reluctant to apply laches where a relationship of trust and confidence exists between the parties. *O'Toole v Hurley,* 115 Mich 517, 521; 73 NW 805 (1898). Where a fiduciary relationship exists, the statute of limitations will not be applied in equity (i.e., laches). *Prine v Hatfield,* 5 Mich App 57, 62; 145 NW2d 809 (1966).

Defendants failed to demonstrate any prejudice occasioned by the delay. Moreover, as will be discussed more thoroughly *infra,* a fiduciary relationship existed between Schmude and defendants at the time Schmude agreed to participate in the joint venture. Accordingly, the trial court properly ruled that the affirmative defense of laches is not available to defendants.

IV

We next address defendants' contention that the trial court erred by finding that there was a breach of a fiduciary duty by defendants.

Projects for the development of oil and gas wells are joint ventures. *Johnson v Ironside,* 249 Mich 35, 44; 227 NW 732 (1929). Joint venturers owe a fiduciary duty to each other. *Van Stee v Ransford,* 346 Mich 116, 125-126; 77 NW2d 346 (1956).

In *Johnson, supra* at 45-46, the Michigan Su-

preme Court described this fiduciary duty, borrowing language from *Goldman v Cosgrove,* 172 Wis 462, 466-467; 179 NW 673 (1920):

> When one becomes a member of a group or association of individuals united for the purpose of prosecuting a joint or common enterprise, such as the purchase of property, each member of the group owes to every other member thereof the duty of fair, open, and honest disclosure, and no member thereof can by connivance, deceit, or suppression of facts within the right, or to the advantage of every other member thereof to know, procure or accept secret profits, commissions, or rebates to the disadvantage of his coadventurers. His relation to his associates is one of trust and confidence, and he holds gains acquired by his *mala fides* for the common benefit of his associates in proportion to their respective interests.

While this duty requires the highest degree of loyalty from all participants, the heaviest burden falls on the manager of the enterprise, or in this case, the operator. *Van Stee, supra* at 126-127.

In the instant case, the trial court found that Schmude agreed to participate in the joint venture with the Omar Group relative to the Cigna 1-23 well. This finding is supported by the record. Schmude sent a letter to O'Briant on May 23, 1984, confirming its intent to participate in the drilling of the Cigna 1-23 well, and it also demonstrated this intent by the April 27, 1984, authorization for expenditures which set Schmude's working interest at twenty-five percent. Thus, the record indicates that even prior to the execution of the JOA at issue in this case, a joint venture for the drilling of the Cigna 1-23 well had been formed.

As a joint venturer, Lyco therefore owed a fiduciary duty to Schmude. The question is whether

Lyco breached this fiduciary duty by failing to notify Schmude of the open acreage and provide Schmude with an opportunity to acquire the Elswick and Bailer leases. We conclude that Lyco breached this fiduciary duty.

The trial court relied in part on *Carroll v Caldwell*, 12 Ill 2d 487; 147 NE2d 69 (1957), and *Texas Oil & Gas Corp v Hawkins Oil & Gas, Inc*, 282 Ark 268; 668 SW2d 16 (1984), in reaching this same conclusion.

In *Carroll, supra*, the plaintiff entered into a joint venture with the defendant to drill oil from two tracts of land (Tracts A and B) on which the plaintiff owned a ³⁄₁₂₈ royalty interest. The defendant operated the well. Abstracts of title, examined by counsel for the joint venture, revealed that the oil and gas lease on Tract B had expired. Upon reviewing this information, the defendant immediately procured a new lease in his own name. As a result, the plaintiff's working interest was reduced. The Illinois Supreme Court held that the defendant violated his fiduciary duty to act for the benefit of plaintiff, the joint venturer, by acquiring the Tract B lease in his own name. *Carroll, supra* at 498-499.

*Texas Oil & Gas Corp v Hawkins Oil & Gas, Inc* turns on facts strikingly similar to the case at bar. In that case, a joint venture was created to produce oil and gas. Hawkins acquired oil and gas leases within the drilling unit. The leases, however, were mistakenly acquired from parties that did not own the rights to the drilling unit.

Prior to the execution of the JOA, drilling commenced on the unit. Texas Oil operated the well. As operator, Texas Oil received all abstracts and title opinions. Upon examining these documents, Texas Oil determined that Hawkins' oil and gas leases were invalid. Without consulting its joint

venture partner, Texas Oil acquired leases contrary to the position of Hawkins.

Hawkins filed suit claiming breach of fiduciary duty. The trial court found a constructive trust in favor of Hawkins for one-half the interest in the leases acquired by Texas Oil. The Supreme Court of Arkansas affirmed, holding that Texas Oil, as operator of the well, owed a duty of fair dealing to Hawkins on the basis of their relationship of trust and confidence created by the JOA. *Texas Oil, supra* at 271.

As did the trial court, we find the reasoning of these cases persuasive. Lyco and the other defendants had a duty of fair dealing with Schmude on their agreement which culminated in the joint venture. As mentioned above, Schmude's agreement to participate in the joint venture was based on a twenty-five percent working interest. This is expressly provided for in the April 27, 1984, authorization for expenditures. Upon discovery of the open acreage, Lyco's duty of fair dealing required that it notify Schmude of the open acreage and provide Schmude an early opportunity to obtain the oil and gas lease to cover this property. By acquiring the lease on the open acreage themselves and thereby reducing Schmude's working interest in the project, defendants breached their fiduciary duty to Schmude. On review of the record, we conclude that this finding of the trial court is not clearly erroneous.

In support of their proportional distribution argument, defendants rely primarily on *Fuqua v Taylor,* 683 SW2d 735 (Tex App, 1984). Indeed, such a proportional allocation of the after-acquired lease for the open acreage is arguably consistent with the provisions of the JOA. However, the trial court found, and we agree, that the executed JOA does not control.

Rescission of a contract is an equitable remedy to be exercised in the sound discretion of the trial court. *Lenawee Co Bd of Health v Messerly,* 417 Mich 17, 31; 331 NW2d 203 (1982). The circumstances in the case at bar were sufficient to justify the trial court's rescission of the JOA. It is undisputed that Schmude was induced to participate in the joint venture by a promise of a twenty-five percent working interest. This interest was undermined by a mutual mistake of the parties, i.e., Schmude did not control the acreage to support a twenty-five percent interest. Nevertheless, an assurance was made that the dispute would be worked out. As this assurance came from the operator of the venture and considering that drilling on the Cigna 1-23 well had already commenced, Schmude signed the JOA. Pursuant to such evidence, we conclude that the trial court acted within its sound discretion by rescinding the JOA and finding a breach of defendants' fiduciary duty on the basis of earlier agreements which set Schmude's working interest at twenty-five percent.

V

Defendants also argue that Schmude's contribution to the drilling unit was only one-sixth of the 37.60 acres and its interest in the well should be based on this actual contribution. We disagree.

The lower court found that Schmude was entitled to a twenty-five percent interest in the project but also was responsible for twenty-five percent of the costs. This finding is supported by the April 27, 1984, authorization for expenditures wherein Schmude agreed to responsibility for twenty-five percent of the costs. This finding by the trial court is therefore not clearly erroneous.

VI

Defendants also assign error to several procedural and evidentiary rulings by the trial court. However, defendants do not address these issues in their brief on appeal. A party may not simply assert an error and then leave it to this Court to discover and explain the basis for that claim. *Williams v City of Cadillac,* 148 Mich App 786, 792; 384 NW2d 792 (1985). Accordingly, we decline to consider these issues.

Affirmed.