# Order

**Michigan Supreme Court**
**Lansing, Michigan**

April 15, 2016

152885 & (12)

THE VICTOR FIRM, PLLC,
                Plaintiff-Appellant,

v

WILLIAM P. FROLING and
MARILYN FROLING,
                Defendants-Appellees.
_____/

Robert P. Young, Jr.,
Chief Justice

Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen,
Justices

SC: 152885
COA: 327504
Macomb CC: 2014-003832-AV

On order of the Court, the motion for immediate consideration is GRANTED. The application for leave to appeal the November 12, 2015 order of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

ZAHRA, J. (*dissenting*).

I would remand this case to the Court of Appeals for consideration as on leave granted. Plaintiff law firm (Victor)[1] filed this collection action in the district court to collect $4,560 in attorney fees from its former clients, defendants William and Marilyn Froling. The Frolings had hired Victor to represent them in a federal lawsuit in the United States District Court for the Eastern District of Michigan. The litigation involved the Frolings' longstanding dispute with the city of Bloomfield Hills (City) regarding flooding of their property. Victor filed a federal lawsuit on the Frolings' behalf and successfully defended against a motion to dismiss the complaint. However, the federal court ordered the Frolings to file an amended complaint. Upon reviewing the amended complaint, the attorney representing the City, William Hampton, left a voicemail for Cindy Victor, requesting concurrence in a motion to strike ¶¶ 5 through 74 of the amended complaint. When the City filed an answer to the amended complaint, it stated in answer to ¶¶ 5 through 74 of the complaint as follows:

> Inasmuch as purported factual allegations Paragraphs 5 through 74 inclusive set forth historical background prior to claims at issue in this Complaint, the parties agree no answer is required as to said paragraphs. Simultaneously herein, [the City] has sought concurrence of [the Frolings] in a Motion to Strike and in lieu of filing such a Motion, a Stipulation has been agreed to between the parties.

_____

[1] "Victor" here refers to both the Victor Firm, PLLC, and its managing member, Cindy Rhodes Victor.

Victor denied having agreed to the stipulation, but the Frolings believed that Victor had "secretly stipulated" with Hampton in violation of a "Memorandum of Understanding" between Victor and the Frolings purporting to impose special conditions on Victor's representation. According to the Frolings, Victor accepted these special conditions and accepted a $20,000 retainer. William Froling states in his affidavit as follows:

> Prior to hiring Ms. Victor to perform legal services, I explained that she would be hired only on the condition that certain promises were made. First, Ms. Victor would have to agree that I would be an unusual client who would closely monitor the litigation and who must be informed of any and all litigation developments, including all communications with the opposing side. Second, I required Ms. Victor to consent to allowing me to decide legal strategy, including stipulations that might ordinarily in any other case be handled exclusively between attorneys. I explained to Ms. Victor some bad experiences that I had with other attorneys when I allowed them to exclusively dictate legal strategy. These prior bad experiences formed the basis for the requirement that Ms. Victor agree to allow me to control strategy, within legal and ethical boundaries.

At a hearing before the district court, the Frolings' attorney acknowledged that the memorandum had not been signed, but claimed that Victor had nevertheless agreed to its terms. Victor denied signing the memorandum and noted that the unsigned memorandum provides that

> [t]he following items listed below constitute this memorandum made between Greenstone Development, LLC (Client) and _____ (legal firm).

According to Victor, the memorandum was drafted for cases in which the client is a defendant, not a plaintiff as the Frolings were in the federal action. The memorandum purports to give the clients broad control over litigation strategy. In particular, ¶ 6a says that all documents must be signed by the clients. Moreover, ¶ 9 says that adjournments or delays of any kind requested by opposing counsel cannot be granted without the clients' approval. Cindy Victor claims that she informed William Froling on numerous occasions while she was representing him that she would not do some of the things he requested. The district court granted summary disposition in favor of Victor and entered a judgment in its favor totaling $4,560, plus taxable costs of $318 and statutory interest.

The Frolings appealed in the circuit court. The circuit court reversed the district court, noting that the Frolings had "presented evidence that they retained control over the federal action consistent with a Memorandum of Understanding, the terms of which

[Victor] agreed to abide"  The circuit court also noted that the Frolings "submitted additional evidence that [Victor] had agreed to a stipulation in the federal action, without first consulting [the Frolings], that the City of Bloomfield Hills did not have to answer ¶¶ 5-74 of the amended complaint."  The court concluded that the Frolings "obviously lost faith and confidence in [Victor]," which caused the Frolings to "incur additional expenses that they would have otherwise not incurred had [Victor] complied with the Memorandum of Understanding."  On reconsideration, the circuit court affirmed its decision, noting that there was "a genuine issue of material fact as to whether the parties had agreed to the terms of the Memorandum of Understanding."  Victor appealed in the Court of Appeals, but the panel denied leave to appeal for lack of merit in the grounds presented.[2]

I disagree with the panel's conclusion that Victor's claim lacks merit.  There is no question that the parties had a contractual relationship.  The district court entered summary disposition on March 3, 2014, in favor of Victor on the basis of invoices that the Frolings did not genuinely dispute, and the Frolings did not appeal that decision.  At that point, the only remaining question was raised at the previous hearing held on February 10, 2014, which the district court began by indicating that it had

> seen written correspondence that--from [Victor] to [the Frolings] that states this Retainer Agreement, okay.  Now, what I haven't seen though is this, the [Frolings] ha[ve] claimed that this representation was bound by a special condition of control to be vested in the [Frolings], and that was by agreement of the parties.  Is--is there a writing that I've missed somewhere, is there some sort of writing that--that speaks to this special nature of--of the Retainer?

At this point counsel for the Frolings stated:

> There is.  I just actually received this today.  It's entitled "Memorandum of Understanding Between Client and Attorney," now this, like the letter, was not signed by both parties, but apparently this was reviewed with--by Mr. Froling, witnessed by a couple other family members or individuals in this company and Ms. Victor, and she agreed to the terms here, which really give him a great deal of control, or at least feedback before things were filed, before things were negotiated, things of that nature.  Knowing that it was unusual, [Mr. Froling] wanted to put it in writing."

---

[2] *Victor Firm PLLC v Froling*, unpublished order of the Court of Appeals, entered November 12, 2015 (Docket No. 327504).

The district court, obviously frustrated at what it thought was "again . . . 11th hour stuff, . . . just as [the Frolings' counsel's] retention last time . . . was kind of a last minute deal to [sic] close to--to the hearing date so that the Court felt compelled to grant [Victor's] request for adjournment," the court again adjourned the matter but assessed $500 in costs against the Frolings.

At the next and final hearing held on March 3, 2014, counsel for Victor pointed out the obvious deficiencies in the memorandum, including that it was unsigned, was merely a sample document, and was simply not relevant to the instant case. In response, counsel for the Frolings claimed that "there's multiple witnesses to know whether I--they printed [it] out from their business office or not" and that Cindy Victor had been asked: " 'Do you understand it, do you agree to this?' And, she did. And, it's recorded, and it's witnessed."

The district court allowed continued discovery on the Frolings' recoupment claim, but the Frolings presented no additional evidence to support their claim that Victor agreed to the memorandum. No witnesses to the agreement were identified, and there is simply no basis to conclude that the memorandum supplemented the retainer agreement, particularly in regard to terms that Victor stated (and the district court agreed) no attorney would have agreed upon. In sum, Victor has presented a very strong argument that the memorandum should simply be disregarded as parol evidence.[3]

Further, even assuming that Victor orally assented to the terms of the memorandum, there is no evidence that Victor breached the agreement in the manner alleged by the Frolings. That is, there is no record evidence that Victor entered into a

---

[3] " ' "[P]arol evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous." ' " *Hamade v Sunoco, Inc (R&M)*, 271 Mich App 145, 166 (2006), quoting *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 492 (1998), quoting *Schmude Oil Co v Omar Operating Co*, 184 Mich App 574, 580 (1990).

stipulation with the attorney representing the City (William Hampton) with regard to striking ¶¶ 5 through-74 of the amended complaint. Although Hampton filed an answer to the amended complaint in federal court stating that "[the City] has sought concurrence of [the Frolings] in a Motion to Strike [¶¶ 5 through 74] and in lieu of filing such a Motion, a Stipulation has been agreed to between the parties," no stipulation was entered by court order and there is no evidence of an effective stipulation.[4] The circuit court initially indicated that summary disposition was not appropriate when a disputed issue of material fact turns on the credibility of an affiant or a deponent. The circuit court, on reconsideration, also relied on *People v Garland*[5] for the proposition that a court has no reason not to accept representations of counsel, who is bound by a duty of candor. The circuit court failed to appreciate that even assuming the truth of Hampton's statement, the stipulation was nonetheless not effective under the applicable court rules because it was not signed by the parties.[6] Because I believe that Victor's claim has merit, I would remand this case to the Court of Appeals for plenary consideration as on leave granted.

VIVIANO, J., not participating due to a familial relationship with the presiding circuit court judge in this case.

---

[4] Under the Federal Rules of Civil Procedure, a plaintiff may dismiss an action after the opposing party has filed an answer without a court order by filing "a stipulation of dismissal *signed by all parties* who have appeared." FR Civ P 41(a)(1)(A)(ii) (emphasis added). See also MCR 2.507(G) ("An agreement or consent between the parties or their attorneys respecting the proceedings in an action is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney.").

[5] *People v Garland*, 286 Mich App 1, 8 (2009), citing *People v Dunbar*, 463 Mich 606, 617 n 13 (2001).

[6] FR Civ P 41(a)(1)(A)(ii).



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

April 15, 2016



Clerk

a0412