(No. 13882.—Reversed and remanded.)
FRANCIS M. PARISH, Defendant in Error, vs. NOAH C. BAINUM et al. Plaintiffs in Error.

*Opinion filed February 21, 1923.*

1. PARTNERSHIPS—*when trading venture in real estate constitutes partnership.* Where a written contract drawn up for the purpose of purchasing and subdividing land and selling the lots, provides that one party is to put up the purchase money, one to manage the transaction and two others to guarantee the first party against loss by giving him their notes for two-thirds of the purchase price, the parties engaged in such an enterprise are partners in the particular transaction although no general partnership exists by the terms of the contract

2. SAME—*party who shares in profits is a partner.* An agreement to share losses is not necessary to constitute one a partner but a sharing in the profits is the test.

3. SAME—*rights of purchaser of a partner's interest.* The purchaser from one partner of his interest in the partnership, without the consent of the firm that the purchaser shall become a partner, does not become a partner by reason of his purchase but merely the owner of the interest which his vendor held in the partnership upon the closing up of the partnership and the payment of the partnership debts.

4. SAME—*when death of partner does not start period of limitation for bringing suit for accounting.* While the death of a partner technically dissolves a partnership, yet where one of the partners purchases the deceased partner's interest and the business is continued in the same way and by the same manager as before the partner's death, such death does not start the period of limitation for bringing suit for an accounting by a surviving partner.

5. SAME—*what does not work a dissolution of partnership.* The fact that the partner in a real estate trading enterprise who put up the greater part of the purchase money, for which the others gave him their notes, is reimbursed by the sale of the notes after sufficient profits have come in does not work a dissolution of the firm, where the circumstances shown by the evidence are inconsistent with that intention.

6. SAME—*when managing partner is entitled to commission on re-sale of forfeited lots.* Where the contract creating a partnership in the enterprise of purchasing and subdividing land and selling the lots provides that one of the partners is to manage the

platting and sale of the lots for ten per cent commission on the gross amount of the sales, the managing partner is entitled to such commission not only on the original sales but on the re-sales of lots which were forfeited for non-payment of the purchase money of previous sales, where there is nothing in the contract that the manager shall guarantee the payment of the purchase money.

7. SAME—*when partner is not liable for interest on an accounting.* Whether a partner is to be charged with interest on an accounting of a partnership depends upon the circumstances of the case, and the fact that he has property of the firm in his hands does not necessarily make him liable for interest where there has been no improper use of the partnership funds, no failure to account for any property or unreasonable delay in so doing.

8. SAME—*when partners in real estate enterprise should not be charged with interest.* Where partners in a real estate venture do not put up any part of the purchase money but give their notes to another partner who furnished the greater part of the funds, in a suit brought by the latter for an accounting said partners should not be charged with interest on funds in their hands after the payment of the indebtedness of the partnership, where the account is disputed and there is no evidence as to when the funds were received or collected.

9. SAME—*when partner should be charged interest on amount not paid in as agreed.* Where one partner fails to pay in the amount of the capital stock he has agreed to pay he is liable for interest on the deficit, and where a partner in a real estate trading enterprise has agreed to furnish the money necessary for the purchase of land for subdivision while the others are to give him their notes for their share, the partner agreeing to furnish the money is liable for interest on the difference between the amount actually furnished by him and the amount the firm is compelled to borrow from outside sources because the purchase price was more than was contemplated.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of White county; the Hon. J. C. EAGLETON, and the Hon. CHARLES H. MILLER, Judges, presiding.

E. B. GREEN, and LAWRENCE Y. SHERMAN, for plaintiffs in error.

GEE & GEE, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The following contract was executed on the date and by the persons named therein:

"This contract, made and entered into this 21st day of February, 1906, by and between Noah C. Bainum and Francis M. Parish, of Carmi, Illinois, and J. S. Sweeney, of Mt. Carmel, Illinois, and Charles A. Bainum, of Bicknell, Indiana, for the benefit of all the said parties:

"*Witnesseth:* That Noah C. Bainum has, for and on behalf of all the parties hereto, recently contracted to purchase of Bernard S. Landes, of Mt. Carmel, Illinois, certain real estate owned by said Landes at Mt. Carmel, Illinois, consisting of thirty acres or more of land, for $460 per acre. It is hereby mutually agreed by the parties that said Francis M. Parish is to furnish the necessary money to pay the said Landes for his land, and to him therefor the said Noah C. Bainum, Charles A. Bainum and J. S. Sweeney are to execute to said Parish their promissory notes for their part of the necessary money to pay for said land, payable as is hereafter agreed between the parties.

"And in further consideration of the mutual interests of all the parties hereto it is further agreed and understood by and between the parties that the title to the said land, when purchased, is to be taken in the name of Noah C. Bainum, who is to hold the title in his name only for the convenience of all the parties and as their trustee.

"And it is further mutually agreed by and between the parties that the land, when so purchased, is to be at once surveyed and platted into lots, to become a part of the city of Mt. Carmel, Illinois, and to be at once offered for sale upon such terms as shall be hereafter agreed upon by the said parties.

"And it is also further agreed that out of the money first arising from the sale of the said lots all expenses of platting and selling the same are to be paid, and all other money arising from said sales is to be applied on the note to F. M. Parish, and the balance of the money derived from sales to be divided between the parties as follows: One-sixth to Charles A. Bainum, one-sixth to J. S. Sweeney, two-sixths to Noah C. Bainum and two-sixths to Francis M. Parish.

"It is further agreed that said lots shall be sold upon the plan and in the manner recently employed by Noah C. Bainum and others in the sale of lots in Bicknell, Indiana.

"And it is further agreed and understood that said Noah C. Bainum is to have charge of the sale of the said lots, the platting thereof and general management connected therewith, and for his

services he is to be paid ten per cent of the gross amount of the sales, and if he employs assistance he is to pay said assistance out of the said ten per cent.

"And it is further agreed and understood that when any lot or lots are sold and settled for, said Noah C. Bainum is to execute and deliver the purchaser a sufficient deed therefor, for and on behalf of all the parties.

"It is further understood that if Mr. C. E. Schaff desires to become a party to this agreement he may do so upon the same terms and conditions imposed upon the other parties, and in the event he does become a party hereto he is to receive a one-sixth interest as the said Charles A. Bainum and the said J. S. Sweeney."

On March 15, 1915, Parish, claiming that the contract created a partnership, filed a bill in the circuit court of White county for an accounting of its affairs against Noah C. and Charles A. Bainum, alleging that Noah C. Bainum had acquired all the interest of Sweeney. A decree was rendered requiring the payment of $4194.38 and the conveyance of certain real estate to the complainant. The Appellate Court affirmed this decree, and the defendants sued out a writ of *certiorari* to review the record.

The land upon a survey overran the estimate, and the purchase price required was $20,092.80 instead of the estimated amount of $13,800. Parish furnished only $15,000, for which the other parties gave their note payable in a year, and they borrowed the rest of the money of a bank on their note. The land was conveyed to Noah C. Bainum, who caused it to be platted as an addition to Mt. Carmel, known as the Sunnyside addition, and consisting of 215 lots. A public sale of lots was made in April, and on July 30, 1906, Noah C. Bainum made a report showing that he had received from such sale $8860.90 and had on hand for sale 180 lots. Payments were made to Parish from time to time out of the proceeds of the sale of lots, so that on January 12, 1907, the balance remaining due on the $15,000 note was $11,378.92, and it was then taken up by the makers, who gave in lieu of it their two notes for $5689.46 each, payable to Parish, who indorsed them to

two banks in Carmi. They were renewed and were eventually paid out of the sale of lots, the last renewal of one being paid in May, 1911, and of the other on April 1, 1913. The $5092.50 borrowed to complete the purchase money was also paid out of the sale of lots. Most of the lots were sold on credit, with a small cash payment and small weekly payments running in some cases through several years. Owing to general financial depression during a part of the time and to the closing of the railroad shops, the location of which in Mt. Carmel was the special inducement for the investment and the laying out of the addition, many of the lots were forfeited after a few payments were made, or without any, and had to be re-sold, sometimes two or three times. There were three or four public sales of lots. The last of the public sales occurred in 1914, and the sale of lots and the collection of the purchase money continued until after the filing of the bill in this case. A previous bill for an accounting had been filed by Parish on September 10, 1914, calling for a sworn answer, which was filed, and the bill was dismissed without prejudice before the filing of the present bill.

It is insisted that there was no partnership. The contract clearly provided for a trading venture in land, in which Parish was to furnish the purchase price, Noah C. Bainum was to purchase the property in his own name, manage and dispose of it, the other two parties with him were to guarantee Parish against loss, so far as two-thirds of the purchase price was concerned, by giving their note for two-thirds of the purchase price advanced by him, and all the parties to the agreement were to share in the profits in the proportions fixed by the contract. The parties engaged in such an enterprise, though no general partnership exists, are partners in the particular transaction. (*Phillips* v. *Reynolds,* 236 Ill. 119; *VanHousen* v. *Copeland,* 180 id. 74; *Winstanley* v. *Gleyre,* 146 id. 27; *Speyer* v. *Desjardins,* 144 id. 641; *Morse* v. *Richmond,* 97 id. 303.) An agree-

ment to share losses is not necessary to constitute one a partner,—sharing in the profits is the test. (*Fougner* v. *First Nat. Bank of Chicago,* 141 Ill. 124; *State Nat. Bank* v. *Butler,* 149 id. 575; *Leeds* v. *Townsend,* 228 id. 451.) "The requisites of a partnership are, that the parties must have joined together to carry on a trade or venture for their common benefit, each contributing property or services and having a community of interests in the profits." (*Meehan* v. *Valentine,* 145 U. S. 611.) In this case there was necessarily a sharing of the losses, if any, for the only means of re-paying the capital invested was out of the proceeds of the sale after the payment of all charges. The failure of Parish to furnish all the purchase money in accordance with his contract to do so would have justified the other parties in refusing to go on with it. They did not do so but accepted the $15,000, procuring the remainder of the purchase money from other sources. They did not require any change in the agreement or in the proportion of the proceeds of the lots which Parish was to receive, as it would seem they might reasonably have done. Having thus gone on without any change in the contract its terms remained in force.

On the first hearing of the cause in the circuit court a decree was entered dismissing the bill for want of equity, from which the complainant appealed to the Appellate Court for the Fourth District. That court reversed the decree and remanded the cause. (202 Ill. App. 563.) Upon its re-instatement, the defendants, by leave of the court, filed certain amendments to their answer, which the court afterward struck from the files. These amendments alleged that T. W. Hall had furnished $1000 of the purchase money and was entitled to one-twentieth interest in the partnership, and that Sweeney had died, and that by reason of these facts the partnership had been dissolved more than five years before the filing of the bill, and the answer set up the Statute of Limitations as a defense. It is insisted that it was error

for the court to refuse to consider these amendments and
the evidence presented in support of them. The evidence is
all in the record, and it appears from it that when Parish
failed to advance the $15,000 and it became necessary for
the other partners to raise the rest of the purchase price,
Noah C. Bainum went to Hall, the president of the First
National Bank of Carmi, to procure the money, and ar-
ranged with him to advance $1000 personally and take one-
twentieth interest in the partnership. This was a personal
arrangement between Noah C. Bainum and Hall. There
is no evidence that the other partners consented to it or
accepted Hall as a partner. The purchaser from one part-
ner of his interest in the partnership without the consent
of his partners that the purchaser shall become a partner
does not become a partner by reason of his purchase but
merely the owner of the proportion which his vendor held
in the partnership after the closing up of the partnership
and the payment of the partnership debts. (*Morrison* v.
*Austin State Bank,* 213 Ill. 472.) Noah C. Bainum after-
ward re-purchased the one-twentieth interest which he had
transferred to Hall. The death of Sweeney dissolved the
partnership. (*Andrews* v. *Stinson,* 254 Ill. 111.) Noah
C. Bainum purchased Sweeney's interest from his estate
and continued the management of the business of the part-
nership the same as before Sweeney's death. While the
partnership was technically dissolved the relations of the
survivors were not in any way changed. The bill was filed
for an accounting of the affairs of the common enterprise,
which was a going concern under the same management
until after the bill was filed, conducted in the same way
and by the same manager after Sweeney's death as before,
who acquired Sweeney's interest, and the Statute of Limi-
tations did not apply. The plaintiffs in error were there-
fore not prejudiced by the refusal of the court to consider
this evidence and its order striking their amendments from
the files.

The plaintiffs in error insist that Parish, the defendant in error, had withdrawn from the partnership in January, 1907, when his $15,000 note was taken up and the two notes given in its place were sold by him. Whether there was a dissolution of the partnership at that time depends upon the intention of the parties. There is a disagreement in the testimony of the witnesses. When the $15,000 note was taken up and the two notes given in its place were sold Parish had received all the money he had advanced, but it cannot be said that he had withdrawn the capital which he had contributed to the partnership. The partnership still had the benefit of the funds though the other partners were carrying the debt. Why they consented to this arrangement does not appear, but the change in the form of the indebtedness put neither the partnership nor them in a worse position than they were before. It does not appear why they gave a note to Parish for the whole of the $15,000 in the first place, when the contract only required that they should give a note for their share of the purchase price. Circumstances were introduced which seem inconsistent with an intention that Parish should cease to be one of the partners, and a finding that the partnership was then dissolved is not supported by the evidence.

The finding of the court as to the state of the accounts is based upon the evidence of Noah C. Bainum given at the hearing of the cause on September 25, 1917, in which he presented a statement of all the receipts and disbursements of the partnership, showing the total receipts from sales of lots to be $45,992.19, and other receipts from borrowed money, rents, taxes returned and miscellaneous sources amounting to $24,780.36, making the total receipts $70,772.55. There was also an itemized statement of all expenditures, amounting to $56,326.37, leaving a balance of net receipts, disregarding commissions, of $14,446.18. The only disputed item in this account is the commissions, which the plaintiffs in error claim should be $8265 and the de-

fendant in error $4599.21. The question which amount is correct depends upon a construction of the sentence of the contract which provides that Noah C. Bainum is to have charge of the platting and sale of the lots and general management, "and for his services he is to be paid ten per cent of the gross amount of the sales, and if he employs assistance he is to pay said assistance out of the said ten per cent." The charge for commissions consists of two items: $3975.50 paid Irish & Dickinson and $4289.50 paid the Bainum Investment Company. It was through the assistance of these two firms that the sales were made. Irish & Dickinson conducted the first sale of lots. They were employed by Noah C. Bainum for this purpose. They took charge of the sale, the advertising, paid all expenses connected with it, and he paid them, in accordance with his contract with them, ten per cent of the amount of their sales, which was $3975.50. He was, of course, entitled to credit in his accounts for this amount under his contract for ten per cent commission on the gross amount of the sales. As a considerable portion of the sales were never completed,—that is, the purchase price was not paid and deeds were not executed for the reasons which have been heretofore mentioned,—the lots on which defaults occurred were sold again and where payments had been made the payments were forfeited. When these lots were again sold a commission of ten per cent was charged for such sale. Irish & Dickinson's commissions were earned when their sales were made, whether the sales were completed or not. When a second sale was made a second commission was likewise earned on the gross amount of the sale as fairly as on the first sale. Sometimes the forfeited payments were more than enough to pay this commission and sometimes they were not. The second sale was just as necessary as the first. It was for the benefit of the partnership. It was necessary to sell the lots to convert them into money, and where the first sale failed a second sale became necessary,

and when the second sale failed a third. The manager under whose direction the sales were made did not undertake to guarantee the payment of the purchase money. His commission was earned when he made the sale. The testimony of Noah C. Bainum in connection with his statement shows that many lots were sold twice, some were sold three times and a few four times,—that is, there were one or two or three forfeitures of previous sales. The statement includes a history of each lot, showing the price collected from the final sale and from all payments made and forfeited, the number of times each lot was sold and the date, and the commission on each sale. The accuracy of the statement is not disputed and shows that the commissions on the sales actually made were $8265. Of this amount $3975.50 was paid to Irish & Dickinson and $4289.50 to the Bainum Investment Company, which was composed of Noah C. and Charles A. Bainum. These two items make the ten per cent of the gross amount of the sales to which Noah C. Bainum was entitled under the contract. The defendant in error insists that this ten per cent should be calculated on the amount of cash received from the sales; but that is not the provision of the contract, and, as has been said, Noah C. Bainum did not guarantee the payment of the price for which lots were sold. The circuit court allowed the plaintiffs in error credit for only ten per cent of the amount of cash received on the sales, and thus found the net receipts after the expenditures and commissions were deducted to be $9846.97, one-third of which it was decreed the plaintiffs in error should pay to the defendant in error, with interest from September 10, 1914, the date of filing the first bill for an accounting. To this was added one-third of $427.67, and for these two sums, amounting, with interest, to $4194.38, the decree was rendered. The credit for commissions should have been $8265 and the net amount for distribution $6181.18, making the defendant in error's one-third $2060.39.

The decree charged the plaintiffs in error with interest from September 10, 1914, on the total amount found due, and the plaintiffs in error complain of this charge. It was not until May, 1913, that, the indebtedness of the partnership having been paid, there was any surplus to distribute to the partners. Whether a partner is to be charged with interest depends upon the circumstances of each case. The fact that he has property of the partnership in his hands does not necessarily make him liable for interest. Where there has been no improper use of the partnership funds, no failure to account for any property or unreasonable delay in doing so, a partner is not liable for interest on money in his possession. (*Randolph* v. *Inman, 172* Ill. 575.) The plaintiffs in error show by their accounting that there was in their hands on September 25, 1917, $2060.39 due the defendant in error, but there is no evidence when it was received before that date. There is no evidence that those funds had all, or any part of them, been received before September 10, 1914. The last public sale was in 1914, and there is no evidence of the amount of it or what part was cash and what part on time, no evidence of what part had been collected or of the amount of any balance in the hands of the plaintiffs in error. The account was disputed, for the defendant in error denied more than $3600 of the credit for commissions claimed by Noah C. Bainum. It was erroneous to charge the defendants with interest.

The decree, so far as regards the items thus far considered, should have been for $2202.94, being $2060.39 and $142.55 (one-third of $427.67) collected after the date of the report.

The plaintiffs in error insist that the defendant in error should have been charged with interest on one-third of the purchase price of the land, $6697.60, which it is claimed he was to put into the partnership without interest and on which his failure to pay the whole purchase price obliged the partnership to pay interest. His contract was to pay

the whole purchase price, and provided that after the pay-
ment of expenses all other money arising from sales was
to be applied on the note to Parish and the balance of the
money derived from sales to be divided among the parties
in the proportions fixed. The only note to Parish was the
note of the plaintiffs in error and Sweeney for two-thirds
of the purchase money. The contract does not provide for
the payment of any interest to Parish on the other one-
third of the purchase money. Because of his failure to
make the payment of the purchase price the partnership
was obliged to pay interest on $20,092.80 instead of $13,-
395.20. He received interest first on $15,000, $1604.80
more than he was entitled to interest on, and the partner-
ship paid interest on $5092.80 borrowed money, these last
two items making $6697.60, which Parish should have
contributed, for which no interest was agreed·to be paid.
Where one partner fails to pay in the amount of the capi-
tal stock he has agreed to, he is liable for interest on the
deficit. (*Delp* v. *Ellis*, 191 Pa. 25; *Krapp* v. *Aderholt*,
42 Kan. 247.) In *Ligare* v. *Peacock*, 109 Ill. 94, it was
held that where the interests of the partners are equal the
firm should be charged with interest on all capital furnished
by one over the amount furnished by the other. So it
was held in *Emerson* v. *Durham*, 64 Wis. 111, and *Mack*
v. *Engle*, 165 Mich. 541. The defendant in error should
therefore be charged with interest at the legal rate of five
per cent on $6697.60 from the date of the delivery of the
deed to Noah C. Bainum until the notes given to him, to-
gether with notes given for money borrowed to complete
the purchase money, were reduced below that amount, and
on the balance from time to time remaining due on such
notes until the indebtedness evidenced by them was paid.
The evidence does not furnish a basis for determining this
amount and the cause will have to be remanded for that
purpose. In the accounting, while interest is to be charged
in favor of the firm, as stated, only two-thirds of the amount

will be charged in the final decree in favor of the plaintiffs in error against the defendant in error.

Objection is made to the provision of the decree which requires the undivided one-third of sixteen unsold lots to be conveyed to Parish, but since the decree ordered a dissolution of the partnership this was a proper disposition of the remaining partnership property.

The judgment of the Appellate Court and the decree of the circuit court will be reversed and the cause will be remanded to the circuit court, with directions to ascertain the amount of interest due from the defendant in error and to enter a decree in accordance with the principles announced in this opinion. *Reversed and remanded, with directions.*