In Matter of Estate of Charles F. Drennan, Deceased.
B. Homer Drennan and Donald H. Drennan, Individually and as Executors of Last Will and Testament of Charles F. Drennan, Deceased, Petitioners-Appellees, v. Katie M. A. Peck, Objector-Appellant.

Gen. No. 10,020.

Third District.

February 23, 1956.

Rehearing denied March 22, 1956.

Released for publication March 22, 1956.

S. S. DuHamel, and Thomas W. Hoopes, both of Springfield, for objector-appellant.

Chapin & Chapin, of Springfield, for petitioners-appellees; John R. Chapin, and Charles A. Chapin, both of Springfield, of counsel.

JUDGE REYNOLDS delivered the opinion of the court.

This case arises in the settling up of the Estate of Charles F. Drennan in the County Court of Sangamon County. Charles F. Drennan left surviving him two sons, Donald H. Drennan and B. Homer Drennan, and one daughter Katie Peck. After their father's death, the two sons, who were also the executors of the estate, filed an accounting as surviving partners of an alleged partnership with their father in farming operations covering a period of from 1941 to the death of the father in 1949. In the original accounting, the share of the estate in the alleged partnership business was shown to be $8,333.85. Later, the brothers filed an amended petition showing that because of certain errors in their original accounting, they had employed a certified public accountant, one Raymond Rickbeil, to audit the books and accounts of the business con-

ducted by the father and two sons from February 27, 1941, the commencement of the alleged partnership to March 8, 1950. The audit of Mr. Rickbeil showed that there was due to the Estate of Charles F. Drennan, deceased, the sum of $15,637.65, with interest at the rate of 5% from March 8, 1950. B. Homer Drennan and Donald H. Drennan, as claimed surviving partners offered to pay to the Executors of the estate of Charles F. Drennan, deceased, the said sum of $15,637.65, with interest from March 8th, 1950. To the amended petition Katie Peck, the sister, filed an answer denying the existence of any partnership; that the audit was made with her consent or approval; that the amount shown in the amended petition as due the estate of her father, was correct, and filed a counter-petition asking for an opportunity to examine the books and records. The Judge of the Probate Court found that there was a partnership between the father Charles F. Drennan and his two sons, B. Homer Drennan and Donald H. Drennan; that the equity of the estate of Charles F. Drennan in said partnership to be that disclosed by the audit of Raymond Rickbeil, C. P. A., namely $15,637.65, and ordered that said amount with interest from March 8, 1950, be accepted by the Executors, in full of the interest of the decedent in the partnership. Katie Peck took an appeal from this order to the Circuit Court. Later, Katie Peck made a motion in the Circuit Court that the Court appoint a referee and that the cause be referred to such referee to take testimony and report the same in writing with his conclusions of law and fact to the Court. A master in chancery was appointed with instructions to report his findings and conclusions on the question as to whether or not there was a partnership. The Master found there was a partnership, and his report was approved by the Circuit Court and that Court found:

1. That at the time of the death of Charles F. Drennan he and his sons B. Homer Drennan and Donald H. Drennan were engaged in the business of farming and raising livestock as partners and had been so engaged since February 1941 and that the business at the time of the death of Charles F. Drennan was a partnership.

2. That the value of the interest of said Charles F. Drennan in the said partnership at the time of his death, plus his share of the profits to March 8, 1950 was $15,637.65, which amount should draw interest at the rate of five per cent per annum from March 8, 1950 until paid, and that amount with interest having been paid by the surviving partners to the Executors of the estate, the Executors were authorized to receive said amount in full payment of the interest of Charles F. Drennan in said business.

From the judgment of the Circuit Court, the objector, Katie Peck has appealed to this Court.

While the appeal lists six points, actually the only point involved is whether or not a partnership existed. In determining the question as to whether there was a partnership, it is necessary to consider not only the relationship between all the parties, but the method of operation of the business involved, and how the profits of the same were distributed. Charles F. Drennan was an elderly man, but seemed to be a good administrator and manager of farming operations. B. Homer Drennan, one of the sons, took little part in the farming and livestock raising, and lived in Chicago. The other son, Donald H. Drennan, was actively engaged in the business with his father. Donald H. Drennan drew a salary of $150 per month, although the father Charles F. Drennan and the other son drew no salary at any time during the 10 years of operation. The land farmed consisted of the land owned by the daughter Katie Peck, that owned by Donald H. Drennan and that

owned by B. Homer Drennan, approximately 750 acres. Katie Peck leased her part of the land to her father for a cash rental of $800.00 a year. The livestock and the farm machinery and equipment on the farm, were owned by the two brothers B. Homer Drennan and Donald H. Drennan, under an agreement between themselves and the father dated February 27th, 1941. The father Charles F. Drennan entered into an agreement with his sons whereby he was to have control and operation of the farm equipment, livestock, etc., for and during his lifetime. He was to receive $100 per month for his services, with the net proceeds of the operation to become the property of the sons. There is no record that the monthly payment of $100 was ever made to him at any time during the operation of the business.

The evidence shows that the whole farming operation was operated as a joint venture. There was one bank account and all proceeds of the operation were deposited in this account and all expenses were paid out of this account. During the years of operation, the old machinery which was the property of the two brothers, B. Homer Drennan and Donald H. Drennan, was traded in on new, new machinery was bought, livestock was traded and other livestock bought, and all this operation was conducted in the name of what Donald H. Drennan called the "Special Account." Profits of the business were drawn out by the three, from year to year, and the audit of Mr. Rickbeil shows that over the years, it averaged one-third to each. If one overdrew one year, he drew less the next year, so that in the long run, each received as his share, one-third. The three of them, over the ten year period, each received as his share, approximately $80,000.00. Each year in January, a computation, or what Donald Drennan called an equalization, was made and each one of the three got his share, based upon what was due after computing what had been drawn by each,

and equalizing it. As Donald H. Drennan testified, "Sometimes somebody had withdrawn more money than his share. When this was done, he had to watch himself the next year. Each of us expected to and finally did get an equal amount of money during the year except for the exception I mentioned, if he got too much the next year he got less." In other words, withdrawals were balanced against shares and balanced, either in January of each year, or within the next year or so. At the end of the ten years, each had withdrawn about the same amount. This evidence is undisputed, and shows conclusively that there was a working arrangement between the father and the two sons to share equally between them the profits of the business, as partners. The objector-appellant has no interest in the drawing account arrangement and has no right to object. That matter only affects the amount due each.

■■ It has been held that sharing in the profits of a joint venture is a test as to whether or not such an arrangement is a partnership. Fougner v. First Nat. Bank of Chicago, 141 Ill. 124; State Nat. Bank v. Butler, 149 Ill. 575; Leeds v. Townsend, 228 Ill. 451; Parish v. Bainum, 306 Ill. 618. The requisites of a partnership are, that the parties must have joined together to carry on a trade or venture for their common benefit, each contributing property or services and having a community of interests in the profits. Meehan v. Valentine, 145 U. S. 611.

■ Written articles of agreement are not necessary to prove a partnership, since the relationship may exist under a verbal agreement. People v. Sholem, 244 Ill. 502; Haug v. Haug, 193 Ill. 645; Bopp v. Fox, 63 Ill. 540. The existence of a partnership may be implied from circumstances. Haug v. Haug, 193 Ill. 645; Bruen v. People, 206 Ill. 417.

In the case of Einsweiler v. Einsweiler, 390 Ill. 286, that court citing with approval People v. Sholem, 244

Ill. 502, said: "It is well settled in this State that written articles of agreement are not necessary, but that a partnership may exist under a verbal agreement, and circumstances may be sufficient to raise an inference of such an agreement."

■ It is well settled that a partnership may exist though the partners' contributions, capital and services differ in amount and nature. Salter v. Condon, 236 Ill. App. 17; Carter v. Wright, 275 Ill. App. 224.

■ ■ It is true that no partnership income tax return was made, but this is not conclusive. The acts of the three men over a period of approximately ten years, the dividing equally of the profits and all the circumstances in connection therewith, seem conclusive that a partnership in fact existed. We have carefully examined the entire record and are of the opinion that the trial court's finding was correct. The decree of the Circuit Court is affirmed.

Judgment affirmed.