2020 IL App (2d) 191140-U
No. 2-19-1140
Order filed November 2, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| EMBASSY UNIVERSITY, an Illinois not-for-profit educational corporation, IBLP MEXICO, a not-for-profit corporation, IBLP MINISTRY ROMANIA, IBLP MINISTRY SOUTH KOREA, and BASIC SEMINARS, CANADA, | ) ) ) ) ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 19-CH-950 |
| THE INSTITUTE IN BASIC LIFE PRINCIPLES, INC., an Illinois not-for-profit corporation, | ) ) ) ) | Honorable Paul M. Fullerton, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*: Trial court erred in dismissing complaint, except for counts seeking a resulting trust, which should have been dismissed without prejudice.

¶ 2    The plaintiffs, Embassy University, IBLP Mexico, IBLP Ministry Romania, IBLP South Korea, and Basic Seminars, Canada, appeal the trial court's dismissal of their complaint against the defendant, the Institute in Basic Life Principles, Inc. (IBLP).  We reverse and remand.

¶ 3                                       I. BACKGROUND

¶ 4     The following facts are drawn primarily from the well-pled allegations of the complaint, because at this stage of the litigation we must take such allegations as true and draw any reasonable inferences in favor of the plaintiffs. *Berry v. City of Chicago*, 2020 IL 124999, ¶ 25; *Bjork v. O'Meara*, 2013 IL 114044, ¶ 21.

¶ 5     William Gothard, Ph. D., is the founder of a ministry that uses seminars to educate people on the importance of living by Biblical principles. He is the founder of all of the parties in this case, both IBLP and the plaintiffs, and served as the president of IBLP's board of directors for many years. All of the parties share a common purpose, to foster and further Gothard's teachings and ministry.

¶ 6     In 1958, a follower of Gothard's teachings donated 20 acres in Oak Brook that eventually became the worldwide headquarters of his ministries (Oak Brook Headquarters).

¶ 7     In 1961, Gothard incorporated IBLP. As alleged in the complaint, a "foundational element of its corporate purpose" was to support and be part of an association of affiliated institutes or ministries (IBLP Association or Association). In recognition of this corporate purpose, the legal title to the Oak Brook Headquarters was placed in IBLP's name "with the understanding" that it "was to be held in trust to be used by all entities in the IBLP Association for the purpose of furthering" Gothard's ministry. The IBLP board of directors committed to abide by this condition when the title to the Oak Brook Headquarters was placed in IBLP's name, and Gothard regularly repeated this commitment and held out the property as being for the use of the worldwide ministry of the IBLP Association, including in seminars given to 2.5 million persons. The plaintiffs used the Oak Brook Headquarters jointly and without charge for training and administration. Through the years, IBLP was also given various other properties to serve as regional training centers, with

the same understanding that the properties would be held in trust for the IBLP Association and used for the worldwide ministry.

¶ 8    In 1964, when Gothard began his series of seminars by publishing materials and books, he directed that IBLP would hold the copyrights to those materials.  All of the Institutes used these materials to conduct seminars and further Gothard's ministry, without regard to copyright and without paying royalties.

¶ 9    The IBLP Association itself was not formally chartered or registered in Illinois.  However, over the years IBLP took several actions to establish and support approximately a dozen affiliated ministries in several countries and various locations in the United States.  Those actions included officially approving requests to form an affiliated ministry, recognizing those ministries as affiliates in the shared enterprise of advancing Gothard's teachings, and providing financial and other assistance to establish the affiliated ministries.  The assistance provided over the years to affiliated ministries included hiring and paying staff, obtaining space, and providing financial support for the operations of each ministry.

¶ 10    In 2005, Gothard, who was then president of IBLP's board of directors, founded Embassy University to conduct worldwide outreach involving daily meditation on the Word of God.  IBLP "made explicit and implicit promises of support to Embassy University" and agreed with Embassy University to use property and resources jointly "to further the principles" of Gothard's ministry.  IBLP paid Embassy University's startup costs, including incorporation fees.  Embassy University was registered as an educational organization with the Florida department of education.

¶ 11    The plaintiffs allege that, at their founding, each of them received assurances of such support.  In return, each of them pledged to work with IBLP and other members of the IBLP Association to spread Gothard's ministry:

"As each Plaintiff Institute in the IBLP Association was created, the Plaintiff Institute agreed and IBLP affirmed to support the Plaintiff Association [*sic*] and to work in unison to spread William Gothard's ministry. Each Institute and IBLP consented and agreed to work together to use all of the IBLP Association's property jointly to further William Gothard's ministry and to spread William Gothard's principles on living through Biblical principles as enunciated by William Gothard." Complaint ¶ 17.

In addition to the five plaintiffs, affiliated ministries approved and supported by IBLP over the years included IBLP Ministry Russia, IBLP Ministry China, IBLP Prison Ministry, IBLP Ministry New Zealand, IBLP Ministry Australia, and IBLP Ministry Ukraine. Gothard is currently a director of two of the ministries affiliated with IBLP. Over time, additional properties were donated to IBLP, which agreed to hold them for the benefit of the Association and its members in their joint mission.

¶ 12 Gothard served on the board of IBLP until 2014, when he was accused of sexual harassment. According to the complaint, the accusation was false, but Gothard "agreed to resign temporarily in order to conduct reconciliation and to clear his name for the benefit of him and the ministry." His accusers filed suit in 2015. In 2018 the suit was voluntarily dismissed without any settlement payments and no further legal action was commenced.

¶ 13 When Gothard sought reinstatement to the board of IBLP, he was rebuffed. After Gothard resigned in 2014, IBLP also began reneging on other commitments. IBLP refused to fund or support Embassy University, obliging Gothard to take over funding it himself in order to carry on its mission as "the main function of the IBLP Association." He did this through a not-for-profit corporation he founded in 2015 called Life Purpose Power Teams. In addition, IBLP acted unilaterally with regard to properties previously held for use by IBLP Association members,

selling regional training centers in Nashville and Australia, and listing for sale the Oak Brook Headquarters and regional training centers in Oklahoma and Romania. IBLP did not seek or obtain the consent of other IBLP Association members before taking these actions. Further, although IBLP holds itself out as continuing the ministry of Gothard and as "reconciling" with him, the complaint alleges that it has not done so and instead is preventing the continuation of his ministry.

¶ 14    In August 2019, the plaintiffs filed suit against IBLP. The complaint asserted claims of breach of fiduciary duty, breach of implied trust, breach of implied contract, and promissory estoppel. It sought damages, injunctive relief barring the sale of the Oak Brook Headquarters and the regional training centers, and the declaration of a constructive or resulting trust over such property. The plaintiffs also filed a *lis pendens* with respect to the Oak Brook Headquarters.

¶ 15    IBLP filed a combined motion to dismiss, raising arguments that the complaint (1) was defeated by an affirmative matter pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2018)) because the plaintiffs lacked both the legal capacity and standing to sue, and (2) failed to state a claim under section 2-615 (*id*. § 2-615) because the plaintiffs had not adequately alleged that the Association existed, that IBLP owed them (or the Association) a fiduciary duty, or the requirements for an implied contract, promissory estoppel, or the declaration of an implied trust. The motion was not supported by an affidavit, but IBLP attached various documents including its articles of incorporation and amendments thereto, the deed to the Oak Brook Headquarters, the sexual harassment complaint against Gothard, and Illinois Secretary of State records showing that none of the plaintiffs were registered with that office and that Embassy University was actually an assumed name of Life Purpose Power Teams. The plaintiffs' response included an affidavit by Gothard based on his personal knowledge as a founder, director, and spiritual leader of IBLP and the Association, describing his creation of the seminars and teaching

materials, and the creation of IBLP, the Association, and Embassy University. Gothard acknowledged that "Embassy University" was now an assumed name of Life Purpose Power Teams. He asserted that the latter was a successor to the original Embassy University and was carrying on its educational and spiritual work. Gothard also asserted that he was personally familiar with all of the plaintiffs.

¶ 16    Apparently accepting IBLP's arguments about capacity or standing, the trial court granted the motion and dismissed the complaint with prejudice "as to named plaintiffs." It then told the plaintiffs that, "[i]f you believe you have some cause of action in line with a lot of what you told me today, I'm not prohibiting you from bringing that." It also released the *lis pendens*. A few days later, the trial court entered an order dismissing the complaint with prejudice as to all plaintiffs "[u]pon the representation of counsel for plaintiff that there are no new or additional plaintiffs." This appeal followed.

¶ 17                                    II. ANALYSIS

¶ 18    The question before us is whether the trial court correctly determined that the complaint should be dismissed with prejudice under either section 2-615 or 2-619 of the Code. We address this question *de novo*, conducting our own analysis without deference to the trial court's decision. *Wallace v. Smyth*, 203 Ill. 2d 441, 447 (2002). A motion to dismiss brought under section 2-615 attacks the sufficiency of the complaint, on the basis that, even assuming the allegations of the complaint to be true, the complaint does not state a cause of action that would entitle the plaintiff to relief. 735 ILCS 5/2-615 (West 2018); *Kanerva v. Weems*, 2014 IL 115811, ¶ 33. "In ruling on such a motion, only those facts apparent from the face of the pleadings, matters of which the court can take judicial notice, and judicial admissions in the record may be considered." *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). A section 2-619 motion to

dismiss likewise assumes the allegations of the complaint are true, but asserts an affirmative defense or other matter which would defeat the plaintiff's claim. 735 ILCS 5/2-619 (West 2018); *Nielsen-Massey Vanillas, Inc., v. City of Waukegan*, 276 Ill. App. 3d 146, 151 (1995). Under either section, a claim should not be dismissed on the pleadings "unless it is clearly apparent that no set of facts can be proved which will entitle [the] plaintiff to recover." *Id.*

¶ 19    On appeal, IBLP raises a host of arguments about why the trial court was correct to dismiss the complaint with prejudice. We begin our consideration with those arguments that are applicable to the entire litigation.

¶ 20                    A. Arguments Applicable to Entire Complaint

¶ 21                    1. Was the Existence of the Association Adequately Pled?

¶ 22    The foundation for many of IBLP's arguments, including those about capacity and standing, is the assertion that the IBLP Association does not really exist. But existence is a question of fact, and thus is generally inappropriate for resolution at the pleading stage. (Generally speaking, arguments about factual issues are best raised after discovery, when a lack of evidence to support a factual allegation can be demonstrated.) IBLP raises this argument both in the context of section 2-615, asserting that the Association's existence is not adequately pled, and section 2-619, contending that certain evidence shows that the Association does not exist and cannot maintain suit.

¶ 23    As for the first contention, we have no difficulty in concluding that the Association's existence is adequately pled. IBLP argues strenuously that the complaint does not allege that IBLP and the affiliated ministries (including the plaintiffs) mutually consented to form any association to act together. This is simply untrue. The complaint alleges that, "by both affirmative words and conduct," IBLP and the plaintiffs (among others) "consented and agreed to act together as an

unincorporated association to further" Gothard's ministry. This allegation asserts that the Association is a voluntary unincorporated association and describes the members of that association. IBLP brushes this aside, contending that it is merely an unsupported conclusion. That is not so; there are ample facts alleged regarding the formation and activities of the Association. Specifically, the complaint alleges that, from its beginnings, one of the corporate purposes of IBLP was to spread Gothard's ministry to the world by aiding "affiliate Institutes and organizations both domestically and internationally" and "to support and be part of an association of affiliated institutes"; that IBLP approved the creation of affiliated ministries across the United States and around the world; that IBLP and the affiliated ministries "consented and agreed to work together" to spread Gothard's teachings; that IBLP and the other Association members agreed to jointly use all of the property held by them to further that mission; that IBLP acted in accord with this agreement by providing the affiliated ministries with financial, legal, and spiritual assistance including staffing and property acquisition; and that IBLP allowed the affiliated ministries to freely use both the copyrighted materials developed by Gothard (for which IBLP owned the copyright) and IBLP's real estate holdings (the Oak Brook Headquarters and regional training centers; collectively, "Properties") to advance a common system of beliefs and a common mission. These are all allegations of fact, and in evaluating a motion to dismiss the complaint, we must accept them as true. *Kanerva*, 2014 IL 115811, ¶ 33. Accordingly, the existence of the Association was adequately pled.[1]

---

[1] We also note Gothard's statements in his affidavit that he was the founder, spiritual leader, officer, and board member of IBLP, and in that capacity he "created a network of associations and not for profit corporations" consisting of "ministries in various cities and countries throughout the

¶ 24    IBLP points out that the plaintiffs have not (yet) produced any documentation of the Association's existence. Indeed, at oral argument on the motion to dismiss, the plaintiffs' attorney readily stated that the associational agreement was not a written contract and the plaintiffs' causes of action did not rest upon any written contracts. Instead, the plaintiffs allege that the Association was formed "by affirmative words and conduct." Although this may appear irregular, it is not unusual for a voluntary unincorporated association. It has long been recognized that an association is simply "a body of persons acting together, without a charter, for the prosecution of a common enterprise." *Chicago Grain Trimmers Ass'n v. Murphy*, 389 Ill. 102, 106 (1945) (holding on a different point superseded by statute (735 ILCS 5/2-209.1, enacted in 1984)); see also *Stein v. Twilight Motel, Inc. of Florida*, 29 Ill. App. 2d 131, 136 (1961) (an association is "the acting together by a group or body of persons without a charter for prosecution of a common purpose"). Thus, the lack of a written instrument is not fatal.

¶ 25    Certainly, evidence of the Association's existence and the terms under which its members agreed to associate will be vital to the plaintiffs' ability to prevail at trial. The mustering of that evidence, however, is a matter for the discovery phase of this litigation. At this stage, we are solely

---

world," including Embassy University and IBLP. Gothard stated that some of the member ministries were incorporated while others were voluntary unincorporated associations. He further averred that "each member of the IBLP Association consented and agreed to work together to teach people my understanding of how Biblical principles can be applied to everyday life." IBLP does not dispute that the facts stated in the affidavit were within Gothard's personal knowledge given the integral role he played in the development of both IBLP and the other members of the Association.

concerned with the allegations of the complaint and whether they state a cause of action. The absence of evidence now is irrelevant to the adequacy of the complaint. See *Jones v. Brown-Marino*, 2017 IL (1st) 152852, ¶ 19 ("Plaintiffs are not required to prove their case at the pleading stage; they are merely required to allege sufficient facts to state all elements that are necessary to constitute each cause of action in their complaint").

¶ 26                                  2. Capacity and Standing to Sue

¶ 27    We turn to IBLP's arguments about capacity and standing. IBLP first asserts that the plaintiffs lack the capacity to sue because they are not Illinois entities and "are not legal entities at all." But this is simply an assertion, one that is contrary to the allegations of the complaint and that we have already rejected. Nor is IBLP's submission of records showing that most of the plaintiffs are not registered with the Illinois Secretary of State dispositive. IBLP has not cited any authority for the proposition that associations must register in order to sue. To the contrary, the most relevant authority permits associations to sue, without imposing any registration requirement:

> "A voluntary unincorporated association may sue and be sued in its own name, and may complain and defend all actions. For the purposes of this Code, 'voluntary unincorporated association' means any organization of 2 or more individuals formed for a common purpose, excluding a partnership or corporation." 735 ILCS 5/2-209.1 (West 2018).

The complaint alleges that the plaintiffs are all ministries founded by Gothard and IBLP for the common purpose of spreading Gothard's ministry. As such, each plaintiff meets the definition of a voluntary unincorporated association contained in section 2-209.1 of the Code,[2] and none is barred from bringing suit in this state.

_____

[2] There are two possible exceptions to the description of all of the plaintiffs as voluntary

¶ 28    As for standing, IBLP's primary argument is that the plaintiffs are attempting to assert rights as members of the IBLP Association, but no such association exists.  In addition to its argument about the sufficiency of the allegations that the Association exists, IBLP argues that documentary evidence proves the Association's non-existence, pointing to the deed for the Oak Brook Headquarters and IBLP's articles of incorporation as amended, neither of which mentions the Association or suggests that the Association (or, through the Association, the plaintiffs) has any interest in any of the properties held by IBLP.

¶ 29    "The doctrine of standing is designed to preclude persons who have no interest in a controversy from bringing suit" and "assures that issues are raised only by those parties with a real interest in the outcome of the controversy." *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999). Lack of standing to bring an action is an affirmative defense, and the burden of proving the defense is on the party asserting it.  *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252 (2010). When considering whether a defendant has established an affirmative matter that requires the

---

unincorporated associations: both IBLP Ministry Mexico and Embassy University are identified in the complaint's caption as not-for-profit corporations.  (Based on the concessions in Gothard's affidavit, it appears that the caption should more appropriately refer to the plaintiff Embassy University as "Life Purpose Power Teams, an Illinois not-for-profit corporation d/b/a Embassy University," but either way the entity is alleged to be an Illinois not-for-profit corporation.)  Not-for-profit corporations are permitted to sue and defend in Illinois courts.  805 ILCS 105/103.10 (West 2018).  Although the General Not for Profit Corporation Act (*id*. § 105/101.01 *et seq.*) imposes certain restrictions on the ability of such entities to sue, IBLP has not raised any arguments under that statute here.

dismissal of a complaint pursuant to section 2-619 of the Code (735 ILCS 5/2-619(a)(9) (West 2018)), the well-pled allegations of the complaint and the legal sufficiency of the plaintiffs' cause of action are deemed admitted. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115 (1993). And "[i]f the 'affirmative matter' asserted is not apparent on the face of the complaint, the motion must be supported by affidavit." *Id*. at 116.

¶ 30    We have already held that the complaint adequately alleges the existence of the Association, and the complaint itself does not demonstrate that the plaintiffs lack standing. IBLP did not submit any affidavit to counter these allegations, although it did submit documentary exhibits. Some of these, such as the records from the Secretary of State and the recorder of deeds, may be subject to judicial notice. However, the exhibits offered by IBLP do not establish that the Association does not exist. The exhibits simply do not mention the Association. Thus, the exhibits do not establish that the plaintiffs lack standing. Moreover, the complaint makes it clear that the plaintiffs are not seeking to vindicate rights spelled out in documents. Rather, they allege that IBLP, through its words and conduct, agreed to support them in their joint enterprise to advance Gothard's teachings, but that IBLP has failed to do so. They allege that IBLP agreed to hold the Properties for the benefit of the members of the Association, and thus the Properties should be subject to a constructive or resulting trust. They also allege that they are members of the Association who have been harmed by IBLP's conduct. Gothard's affidavit supports the plaintiffs' allegations. Together, the allegations and affidavit refute IBLP's contention that the plaintiffs have no interest in this controversy. IBLP has not established the plaintiffs' lack of standing to bring this suit.

¶ 31                           3. Ecclesiastical Abstention

¶ 32     Before turning to the adequacy of the individual claims asserted by the plaintiffs, we address an argument not raised by IBLP before the trial court: whether we must avoid deciding the plaintiffs' claims under the doctrine of ecclesiastical abstention.  Generally, we will not consider arguments raised for the first time on appeal.  *Hytel Group, Inc. v. Butler*, 405 Ill. App. 3d 113, 127 (2010).   Even if we were to consider the argument, however, it lacks merit.

¶ 33     It has long been recognized that courts can adjudicate property rights involving religious bodies if they can do so without deciding matters of religious doctrine.  "Whilst we will decide nothing affecting the ecclesiastical rights of a church, which we are not competent to do, its civil rights to property are subjects for our examination, to be determined in conformity to the laws of the land, and the principles of equity."  *Ferraria v. Vasconcellos*, 31 Ill. 25, 46 (1863).  Illinois courts have not hesitated to adjudicate intra-church disputes over property where doctrinal matters are not involved.  See *German Evangelical Lutheran Trinity Congregation, of the Unaltered Augsburg Confession v. Deutsche Evangelisch Lutherische Dreieinigkeits Gemeinde, Ungeäenderter Augsburgische Confession*, 246 Ill. 328 (1910) (adjudicating dispute over church property and refusing to order partition where there was no religious schism and the property could still be used for its original purpose by both the majority and minority groups of worshippers).  Courts may also hear other causes of action involving religious bodies.  See *Duncan v. Peterson*, 359 Ill. App. 3d 1034, 1045-46 (2005) (canvassing federal first amendment cases and foreign as well as Illinois case law before holding that court could address plaintiff's tort claims so long as they could be "resolved without inquiry into religious principles and doctrine").  Here, both the allegations of the complaint and the parties' statements confirm that there is no doctrinal dispute— both IBLP and the plaintiffs publicly adhere to Gothard's teachings.  Although IBLP is correct that no court can compel it to support the plaintiffs morally or spiritually, and thus certain of the relief

sought by the plaintiffs may be beyond a court's powers, courts can adjudicate questions governed by civil law such as the relationship between the parties and whether that relationship meets the requirements for the imposition of an implied trust over the Properties or other relief.

¶ 34          B. Sufficiency of the Complaint as to Particular Claims

¶ 35    We now consider whether the plaintiffs' individual causes of action were adequately pled—specifically, whether the plaintiffs alleged facts necessary to support each element of the particular cause of action. *Jones*, 2017 IL (1st) 152852, ¶ 19. In doing so, we must take the allegations as true and construe them in the light most favorable to the plaintiffs, drawing any reasonable inferences in favor of the plaintiffs. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86 (1996).

¶ 36          1. Breach of Fiduciary Duty

¶ 37    Allegations of a fiduciary duty form the basis for several of the plaintiffs' claims. IBLP attacks the assertion of a fiduciary duty on several grounds. First, it claims that the plaintiffs have not adequately pled the type of relationship that could give rise to a fiduciary duty. This argument is refuted by the complaint. The plaintiffs allege that IBLP mutually agreed with all of the affiliated ministries to join together and to use the property held by IBLP, along with the labor and other resources of the affiliates, to pursue a common enterprise—the advancement of Gothard's teachings around the world. In their agreement to act together in the pursuit of a common goal, the members of the IBLP Association acted as a partnership. See *Hossack v. Ottawa Development Ass'n*, 244 Ill. 274, 291 (1910) (courts generally treat the members of an association as partners); see also *Urban v. Brady*, 86 Ill. App. 2d 158, 162 (1967) ("[t]he requisites of a partnership are that the parties have joined together to carry on a trade or venture for their common benefit, each contributing property or services and having a community of interest in the profits"). In keeping

with the analogy to partnerships, members of an association may owe a fiduciary duty to one another similar to the duty owed between partners. *Hossack*, 244 Ill. at 290-91 ("For the purpose of determining the fiduciary relations existing between the association and its members, the association itself *** may be regarded, at least in equity, as an *** entity, involving and possessing equitable rights and relations, which if not identical with, were at least analogous to, those existing among partners."). Generally, unless permitted by the terms of the associational agreement, no one member can terminate the relationship unilaterally. See *id*. at 292.

¶ 38    IBLP argues that *Hossack* does not apply because here there is no written agreement, unlike in *Hossack*. As we have noted, however, there is no requirement that an association be formed via a written agreement. See *Chicago Grain Trimmers*, 389 Ill. at 106; see also *Urban*, 86 Ill. App. 2d at 162 ("[w]ritten articles of partnership are not essential to the formation of a partnership"); *In re Drennan's Estate*, 9 Ill. App. 2d 324, 329 (1956) ("[w]ritten articles of agreement are not necessary to prove a partnership, since the relationship may exist under a verbal agreement"). IBLP cites *A.J. Lindemann & Hoverson Co. v. Advance Stove Works*, 170 Ill. App. 423, 423 (1912), as case law issued after *Hossack* that abrogated its holding that members of a nonprofit association are governed by the law of partnership. However, we can take no cognizance of *Lindemann & Hoverson* as legal precedent, because (1) it was issued before 1935 and therefore is not precedential (see *Bryson,* 174 Ill. 2d at 95), and (2) anyway, a subsequent appellate court case cannot abrogate or overrule a prior supreme court decision.

¶ 39    IBLP lastly argues that, even if the plaintiffs alleged a viable fiduciary relationship, they did not allege any breach of fiduciary duties because they did not allege how the sale of the Oak Brook Headquarters or other Properties would harm them. But the attempt to sell the Properties is only one of the breaches of fiduciary duty alleged by the plaintiffs. Moreover, this argument is

refuted by an examination of the complaint, which alleges that the plaintiffs used the Oak Brook Headquarters for training and administrative purposes, and used the regional training facilities as base locations "to serve prisoners, juvenile delinquents, and grammar and high school students who volunteer for programs of Christian education in public schools," thereby facilitating Association members' provision of "personal interaction and delivery of ministry message and services to vulnerable populations." Complaint, ¶ 16. The harm to the plaintiffs if the Properties were sold can be reasonably inferred from these allegations. *Bryson*, 174 Ill. 2d at 86. IBLP has not shown that the claims based upon asserted breaches of fiduciary duty are insufficiently pled.

¶ 40          2. Claims for Breach of Implied Contract and Promissory Estoppel

¶ 41     IBLP next attacks the plaintiffs' claims that are based on implied contract and promissory estoppel. The main thrust of their argument regarding implied contract—that the complaint does not allege any mutual agreement between the members of the IBLP Association—must fail, as we have already rejected this argument. IBLP also argues that the complaint does not allege facts that would show "an offer and acceptance relative to the use and control" of the Properties or the terms of the alleged agreement, and thus it does not state a claim for either implied contract or promissory estoppel. But the complaint alleges that title to the Properties was placed in IBLP's name on the condition that IBLP use it for the Association's benefit and the common purpose of spreading Gothard's teachings around the world, and that IBLP agreed to this condition and agreed to hold the Properties in trust for the Association. These allegations regarding IBLP's acceptance of the Properties under this condition are adequate at this point in the litigation. *Id*. Similarly, although IBLP argues that the other members of the Association provided no consideration in return for the benefits they gained from the Properties, the complaint alleges that each of the plaintiffs worked to advance the Association's common purpose, conducting training for believers and in other ways

working toward that goal.  Once again, at this stage these allegations are sufficient.  See *Drennan's Estate*, 9 Ill. App. 2d at 330 ("[i]t is well settled that a partnership may exist though the partners' contributions, capital and services differ in amount and nature").

¶ 42                    3. Implied, Constructive and Resulting Trust Claims

¶ 43    The complaint alleges that, because IBLP obtained the Properties with the understanding that they would be used to further the common purpose of the Association, an implied trust arose over the Properties in favor of the Association members.   Several counts seek a declaration of such an implied trust.  One count seeks imposition of a constructive trust over the Properties.  Other counts seek the imposition of a resulting trust.  IBLP contends that the plaintiffs have not adequately pled facts supporting any of these potential remedies.

¶ 44    As to an implied trust, the plaintiffs cite various cases in which courts held that certain church property was held in implied trust for all members of the congregation.  See, *e.g.*, *German Evangelical Lutheran Trinity Congregation*, 246 Ill. at 341.  To the extent that it specifically addresses the imposition of an implied trust, IBLP relies on two arguments: that the complaint did not allege the existence of the Association, and that the doctrine of ecclesiastical abstention wholly bars any court from determining this dispute.  As we have already rejected both of these arguments, they need not detain us further.

¶ 45    A constructive trust may be found when "some equitable principle will be violated if the defendant is permitted to retain the beneficial interest of the property at issue," such as "when there has been actual or constructive fraud or where there has been a breach of fiduciary duty." *Midwest Decks, Inc. v. Butler & Baretz Acquisitions, Inc.*, 272 Ill. App. 3d 370, 380 (1995).  IBLP argues that the complaint did not allege any fiduciary relationship, but this argument fails for the reasons already stated.

¶ 46    IBLP fares better with its argument that the complaint does not state a claim for resulting trust. Such trusts can arise in three circumstances: where an express trust fails, where an express trust has been fully performed but the trust estate was not exhausted, and where one party pays for property and directs the seller to convey it to another. *Midwest Decks*, 272 Ill. App. 3d at 381.

¶ 47    IBLP notes that the plaintiffs have not alleged that there was any express trust, so neither of the first two possibilities are present. The plaintiffs rejoin that they have alleged the third possible basis for a resulting trust, as they pled that the properties at issue were donated for the use of the entire IBLP Association, not merely IBLP. However, some of the allegations bring this conclusion into question. For instance, the timeline recited in the complaint alleges that certain property was donated for Association use in 1958, but IBLP itself was not incorporated until 1961 and there is no indication when IBLP first approved the recognition and support of affiliates. Unlike theories based on *IBLP's* agreement to hold property for the benefit of others, a resulting trust focuses on the intent of the *donor* when the specific property was donated. We hold that, at least in its current form, the complaint does not adequately allege facts indicating that the persons who donated the Properties knew of the Association and directed that the Properties be held for the benefit of the Association and its members. Thus, the trial court correctly dismissed the claims asserting a resulting trust (counts VI and VII).

¶ 48    We must modify the terms of that dismissal, however. IBLP did not establish that the plaintiffs could not allege any set of facts that would support such a claim. Thus, the dismissal of the resulting trust claims should have been without prejudice. See *Buffa v. Haideri*, 362 Ill. App. 3d 532, 540 (2005) ("[i]f a plaintiff can state a cause of action by amending its complaint, dismissal with prejudice should not be granted"). We therefore reverse the designation of that dismissal as "with prejudice."

¶ 49                            C. Misnomer of Embassy University

¶ 50    IBLP does not argue that the plaintiffs' improper designation of Embassy University in the caption of the complaint itself justifies the trial court's dismissal of the complaint. Thus, we do not express any opinion on that matter (whether the incorrect designation was grounds for dismissal). However, we note that upon remand the plaintiffs will have the opportunity to replead should they wish to do so. It would behoove them to amend the complaint to reflect the correct names and descriptors of the parties.

¶ 51                            III. CONCLUSION

¶ 52    For the reasons stated, the judgment of the circuit court of Du Page County is affirmed in part and reversed in part. The dismissal of counts VI and VII is affirmed, although the dismissal is without prejudice. The remainder of the judgment is reversed. The cause is remanded for further proceedings consistent with this decision.

¶ 53    Affirmed in part and reversed in part; remanded.